CITIZENS UTILITIES COMPANY OF ILLINOIS *et al.*, Plaintiffs-Appellants, v. THE POLLUTION CONTROL BOARD *et al.*, Defendants (The Environmental Protection Agency, Defendant-Appellee; Valley View Community Unit School District No. 365U, Township of DuPage, Will County, *et al.*, Intervening Appellees).

Third District No. 3—84—0413

Opinion filed May 3, 1985.—Rehearing denied June 19, 1985.

John L. O'Brien, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, and Daniel J. Kucera, Raymond A. Fylstra, and James R. O'Dell, all of Chapman & Cutler, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (James Archier, Assistant Attorney General, of Chicago, of counsel), for appellee Environmental Protection Agency.

Barry L. Moss and George A. Marchetti, both of Moss & Bloomberg, Ltd., of Bolingbrook, for appellee Valley View Community Unit School District No. 365U.

Richard J. Kavanagh, of Kroesch & Kavanagh, of Joliet, for other appellees.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiffs, Citizens Utilities Company of Illinois, Prestwick Utilities Company and Derby Meadows Utility Co., Inc., are each public utility companies operating one or more wastewater treatment plants. Pursuant to a recent act of the General Assembly, Public Act

83—883, the *Pollution Control Board* revoked the certification of plaintiffs' plants as "pollution control facilities" as that term is defined in section 21a—2 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 502a—2). The plaintiffs sought administrative review of the Board's decision in the circuit court of Will County. Both the Valley View Community Unit School District No. 365U and the township of DuPage appeared as intervenors. The circuit court upheld the Board's decision, and the plaintiffs appealed to this court.

Prior to the adoption of Public Act 83—883, all wastewater treatment facilities were to be assessed for property tax purposes according to the economic productivity of the facility, and not according to the market value. This deviation from the normal assessment process resulted in a more favorable tax treatment for the wastewater facilities and was intended to encourage—through tax incentives—the installation and maintenance of such facilities. However, by reason of Public Act 83—883, certain classes of facilities were denied this favored treatment. Among the classes of facilities excluded were those "operated by any person other than a unit of government *** for sewage disposal or treatment." (Ill. Rev. Stat. 1983, ch. 120, par. 502a—2.) In applying this legislative revision, the Board relied on its published definition in determining whether a facility was operated "for sewage disposal or treatment." Sewage is defined as "water-carried human and related wastes from any source." (35 Ill. Adm. Code sec. 301.385.) The definition published for wastewater is broader, and includes sewage as well as industrial and other wastes. (35 Ill. Adm. Code sec. 301.385.) Before the Pollution Control Board and the circuit court, the plaintiffs contended that the classification established by Public Act 83—883 was constitutionally infirm.

The plaintiffs correctly cite *Colgate v. Harvey* (1935), 296 U.S. 404, 80 L. Ed. 299, 56 S. Ct. 252, for the proposition that the constitution limits the powers of the State to classify taxpayers for the purpose of tax legislation.

> "The classification, in order to avoid the constitutional prohibition, must be founded upon pertinent and real differences, as distinguished from irrelevant and artificial ones. The test to be applied in such cases as the present one is—does the statute arbitrarily and without genuine reason impose a burden upon one group of taxpayers from which it exempts another group, both of them occupying substantially the same relation toward the subject matter of the legislation?" (*Colgate v. Harvey* (1935), 296 U.S. 404, 423, 80 L. Ed. 299, 307, 56 S. Ct. 252, 256.)

It is suggested that there are no real differences, that is, only irrele-

vant and artificial differences, between wastewater treatment plants owned and operated by plaintiffs and all other pollution control facilities, between plaintiffs' plants and wastewater treatment plants which process nonsewage wastewater, and between plaintiffs' plants and wastewater treatment plants operated by governments. Accordingly, the plaintiffs urge that the classification scheme incorporated in Public Act 83—883 fails the test set forth in the *Colgate* case.

■■ A threshold question to resolve before considering the matters raised by the plaintiffs is whether the Board's implementation of Public Act 83—883 was consistent with the legislative intent. Specifically, in implementing the Act, the Board assumed that its published definition of "sewage" was the definition intended by the legislature. We believe this assumption was correct, for in construing statutory enactment, the General Assembly is presumed to know existing law (*Gaither v. Lager* (1954), 2 Ill. 2d 293, 118 N.E.2d 4), including the body of law existing in administrative regulations (*DeJaynes v. General Finance Corp.* (S.D. Ill. 1977), 442 F. Supp. 377, *aff'd in part, rev'd in part, Basham v. Finance America Corp.* (7th Cir. 1978), 583 F.2d 918). It is thus appropriate to assume that the lawmakers knew the Board's definition of "sewage" and intended the Board to apply that definition in revoking certifications of certain pollution control facilities.

■ The plaintiffs question why a special class should be created for facilities that treat sewage, a potential water contaminant, when devices that control noise or air pollution are exempted from the class. According to the plaintiffs, to classify sewage waste treatment differently from industrial waste treatment is unjustifiably arbitrary. Is there a rational basis for the distinction between sewage treatment facilities and other types of pollution control devices? We believe so. The distinction rests upon the fact that sewage treatment plants provide the service which ultimately is sold by the company, *i.e.*, sewage treatment and disposal. In this respect, sewage treatment facilities differ from other types of pollution control devices. Other types of pollution control devices do not provide the ultimate service or product sold by the company. In respect to "water-carried human wastes," the treatment of those wastes is the ultimate product or service. Industrial pollutants, whether a potential contaminant of the water or the air, are byproducts of the ultimate service or product sold by the company. In upholding the original legislation creating favorable tax treatment for pollution control facilities, the Illinois Supreme Court observed:

"that pollution-control facilities are not necessarily economi-

cally productive and should be valued for tax-assessment purposes on the basis of their productive earning capacity. Such treatment reduces the tax burden on those required to build such facilities and encourages their installation in other places." (*People ex rel. Bosworth v. Lowen* (1984), 102 Ill. 2d 242, 247-48, 464 N.E.2d 1053, 1056.)

We perceive the purpose of Public Act 83—883 as an attempt to classify with more precision that group of taxpayers for whom pollution control facilities are not economically productive, those taxpayers who must, for example, deal with fly ash as a byproduct of electrical generation, the ultimate product. The unamended classification included taxpayers whose product or service was pollution control, as well as those whose byproducts required control measures. The legislature identified those taxpayers whose ultimate service was pollution control as also being those engaged in the disposal and treatment of "water-carried human and related wastes." This rationale for classification has found approval in the courts. (*People ex rel. Bosworth v. Lowen* (1984), 102 Ill. 2d 242, 464 N.E.2d 1053; *Commonwealth Edison Co. v. Department of Local Government Affairs* (1980), 86 Ill. App. 3d 768, 408 N.E.2d 263, *aff'd* (1981), 85 Ill. 2d 495, 426 N.E.2d 817.) We cannot, therefore, agree that this classification—attacked by the plaintiffs—lacks the rational basis necessary to survive constitutional scrutiny.

The plaintiffs also contend that it is arbitrary to create a classification, for tax purposes, of nongovernmental entities. Clearly, to exempt from taxation property owned by units of local government is permissible. (Ill. Const. 1970, art. IX, sec. 6.) However, Public Act 83—883 provides a special classification not for pollution control facilities "owned" by units of government, but instead for facilities "operated" by units of government. The litigants concede that no sewage treatment facility exists which is owned by a nongovernmental unit but is operated by a unit of government. There is then only the possibility that the plaintiffs receive different tax treatment than other nongovernmental entities owning like facilities. We decline to consider the validity of the legislature's enactment based on such hypothetical circumstances. *In re Creager* (1944), 323 Ill. App. 594, 56 N.E.2d 649.

■ The plaintiffs assert that Public Act 83—883 is contrary to public policy and inconsistent with other tax laws. We would note that the legislature, which declares public policy, can from time to time amend that policy, but, as we have just noted, we perceive this amendatory action as an attempt to refine, with more precision, pre-existing public policy. That the definition of "pollution control facili-

ties" was unchanged from other taxes, *e.g.*, Retailer's Occupation Tax (Ill. Rev. Stat. 1983, ch. 120, par. 440a), Use Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 439.2a), Service Occupation Tax (Ill. Rev. Stat. 1983, ch. 120, par. 439.102a), and Service Use Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 439.32a) does not necessarily require the conclusion that the decertification required by Public Act 83—883 is inconsistent with these other laws. In promulgating public policy, the General Assembly must weigh competing interests and competing public purposes. Clearly, one such purpose is to foster the installation of pollution control devices. Another equally valid purpose is the raising of revenues. We note that the real property tax is primarily an income source for local governments, while the other taxes enumerated, for the most part, flow into the State's general fund. It would not be inconsistent or irrational for the legislature to weigh the need of local governments for revenue *vis-a-vis* the goal of fostering environmental quality and reach one result, while weighing the need of the State for revenue *vis-a-vis* the same goal and reaching a different result.

■ We find no violation of the constitutional requirement (Ill. Const. 1970, art. IX, sec. 4(a)) for uniformity of taxation in the classification set forth in Public Act 83—883. As previously explained, this very classification has met the approval of our supreme court. *People ex rel. Bosworth v. Lowen* (1984), 102 Ill. 2d 242, 464 N.E.2d 1053; *Commonwealth Edison Co. v. Department of Local Government Affairs* (1980), 86 Ill. App. 3d 768, 408 N.E.2d 263, *aff'd* (1981), 85 Ill. 2d 495, 426 N.E.2d 817.

■ In short, we find the arguments of the plaintiffs to be without merit. The authorities cited herein provide a firm, constitutional foundation for upholding the validity of Public Act 83—883. Accordingly, the judgment of the circuit court of Will County sustaining the orders of the Illinois Pollution Control Board, whereby the plaintiffs' certifications to operate as "pollution control facilities" were decertified, is affirmed.

Affirmed.

HEIPLE, P.J., and WOMBACHER, J., concur.