MARY DOE *et al.*, as Next Friends of John Doe *et al.*, Two Unnamed Patients of Parkside Lodge of Illinois, d/b/a Parkside Youth Center, Inc., *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. JOHN THEODORE SANDERS, as Supervisor of the Illinois State Board of Education, *et al.*, Defendants-Appellants and Cross-Appellees.

First District (6th Division)   Nos. 1—88—2915, 1—88—3023 cons.

Opinion filed September 29, 1989.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, of counsel), for appellants John Theodore Sanders and Illinois State Board of Education.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini, Michael R. Grimm, and Edward M. Kay, of counsel), for appellant James L. Elliot.

Mayer, Brown & Platt, of Chicago (Lynne M. Raimondo and Michael Alter, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, Mary Doe and Richard Jones, brought this declaratory action against State and local educational authorities seeking damages and injunctive relief in connection with payment for high school tuition for out-of-district students. Plaintiffs filed suit as next friends of minors John Doe and Jane Jones, two unnamed patients of plaintiff Parkside Lodge of Illinois, Inc., d/b/a Parkside Youth Center, Inc., a private residential center for treating alcohol and drug abuse.

Defendants include John Theodore Sanders, in his official capacity as Superintendent of the defendant Illinois State Board of Education, and the State Board of Education itself (these defendants referred to herein as State Board). The other defendants are Dr. James L. Elliot, in his official capacity as superintendent of defendant Maine Township

High School District 207 Board of Education, and the Maine Township High School District 207 itself (these defendants referred to herein as local defendants, or local school district).

After the trial, the trial court entered judgment for plaintiffs with respect to their count alleging violation of the Illinois School Code (Ill. Rev. Stat. 1987, ch. 122, par. 1—1 *et seq.*). The court enjoined defendants from the practice of charging nonresident tuition to plaintiffs, and awarded damages for previous tuition payments in the amount of $60,731.60. The court denied plaintiffs any relief under section 504 of the Federal Rehabilitation Act of 1973 (29 U.S.C. §794 (1982)). The court stayed enforcement of its order pending appeal.

All defendants appeal from the trial court order entering judgment for plaintiffs on their count alleging violation of the Illinois School Code. Plaintiffs cross-appeal from the trial court order denying additional relief, including attorney fees, under the Rehabilitation Act.

On appeal, defendants contend that plaintiffs are not entitled to a free public education while residing at Parkside. They argue that the trial court erred in construing the tuition funding provision in section 18—3 of the Illinois School Code to include substance abuse centers for adolescents voluntarily placed by their parents and not requiring special education services. The local school district and its superintendent also argue on appeal that the school district is not liable for any tuition reimbursement because it does not set State educational policies; and that the trial court abused its discretion in denying them leave to file an answer.

Parkside is a nonprofit corporation affiliated with Lutheran General Hospital. It provides extended residential treatment for adolescent children suffering from alcoholism or other disabling substance abuse problems. There are only two other such facilities in Illinois. The patients at Parkside are from 14 to 21 years old, and they remain in residence for about 6 to 12 months.

Mary Jane Bressler, the director of Parkside, testified that it is very important that Parkside's patients attend school because part of the recovery includes providing a normal environment for the adolescents. Most of the children in the program had experienced truancy and delinquency problems prior to coming to Parkside. In Bressler's opinion, the Parkside patients are "maladjusted" because the substance abuse had adversely affected their emotional and behavioral ability to adjust to their environment. They were often several years behind their expected developmental level and suffered from various impairments limiting their major life activities.

Until the 1987-88 school year, Parkside patients attending Maine

South High School received a free education. They were not required to pay nonresident tuition fees. Instead, the local school district received payments from the State pursuant to section 18—3 of the School Code.

On July 16, 1987, the State Board issued a memorandum to all school districts, including the local defendant school district, establishing a new statewide policy for funding the education of children residing in substance abuse detoxification facilities. The State Board announced that children whose functioning was impaired by reason of dependency or addiction to alcohol or other substances were not "maladjusted" within the meaning of section 18—3, and therefore, such children were not eligible for educational funding under section 18—3. If the children's parents reside outside the district, the local school district must charge tuition.

Parkside began paying the tuition of $6,500 per pupil per year, or $36.40 per day. As of September 15, 1988, Parkside had paid $60,731 in nonresident tuition fees. Payments were made directly to the local school district. As a result, Parkside was forced to cut admissions to its treatment program.

On August 5, 1988, the trial court entered an interlocutory order declaring that defendants had violated section 18—3; preliminarily and permanently enjoining defendants to provide plaintiffs with a free public education and tuition payments; and awarding money damages for tuition reimbursement to be calculated at a later date. The court ruled that defendants had not violated section 504 of the Rehabilitation Act.

The local defendants moved to vacate the order, contending they should not be held liable to plaintiffs because they were not responsible for setting education policies. Instead, they merely acted pursuant to their official duties to abide by policies set by the State Board of Education. The local defendants also sought leave to file an answer to the complaint *instanter*. The answer stated that by law they were not responsible for setting education policies and were not financially responsible for payment of plaintiffs' tuition. Plaintiffs objected. The court denied the local defendants leave to file the answer *instanter*, noting that the answer added nothing that was not already before the court.

On September 15, 1988, the trial court entered final judgment declaring that all defendants violated section 18—3; permanently enjoining all defendants from requiring tuition payments; and awarding plaintiffs tuition reimbursement of $60,731.60.

Defendants contend that the trial court improperly construed and

applied section 18—3 to encompass a short-term substance abuse center for adolescents who are voluntarily placed by their parents and do not need special educational services.

Section 18—3 of the Illinois School Code provides that the State shall pay tuition costs of maladjusted children residing in a home for maladjusted children:

"§18—3. Tuition of children from orphanages and children's homes, or in State housing units.

When the children from any home for orphans, dependent, abandoned or maladjusted children maintained by any organization or association admitting to such home children from the State in general or when children residing in a school district wherein the State of Illinois maintains and operates any welfare, penal or educational institution on property owned by the State of Illinois, which contains houses, housing units or housing accommodations within a school district, attend grades kindergarten through 12 of the public schools maintained by that school district the Superintendent of Public Instruction shall direct the State Comptroller to pay a specified amount sufficient to pay the annual tuition cost of such children who attend such public schools ***." Ill. Rev. Stat. 1987, ch. 122, par. 18—3.

■ Words used in a statute are to be given their ordinary and popularly understood meaning. (*Maloney v. Bower* (1986), 113 Ill. 2d 473, 498 N.E.2d 1102; *Kozak v. Retirement Board of Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 447 N.E.2d 394.) The plain language of section 18—3 compels the conclusion that the legislature intended the State to pay for the public education of children residing in homes for treatment of substance abuse. The term "maladjusted children" is not defined in the School Code. "Maladjusted" is commonly defined as "poorly or inadequately adjusted; lacking harmony with one's environment from failure to reach a satisfactory adjustment between one's desires and the conditions of one's life." (Webster's Third New International Dictionary 1365 (1981).) Under this common and popularly understood meaning, children recovering from chemical addiction and requiring special services of an extended care residential treatment center are "maladjusted."

Furthermore, until 1987, the State Board's own policy was to fund the public school education of students residing at substance abuse residential treatment centers. Because section 18—3 was not repealed or amended when other sections of the School Code were being extensively revised, we presume that the legislature agreed with the long-term, consistent interpretation given to section 18—3 by the

administrative agency charged with its enforcement. (See *Citizens Utilities Co. v. Illinois Pollution Control Board* (1985), 133 Ill. App. 3d 406, 478 N.E.2d 853; *Pielet Brothers Trading, Inc. v. Pollution Control Board* (1982), 110 Ill. App. 3d 752, 442 N.E.2d 1374.) The State's decision in 1987 to reverse its policy does not alter this reasoning. See *Immigration & Naturalization Service v. Cardoza-Fonseca* (1987), 480 U.S. 421, 446 n.30, 94 L. Ed. 2d 434, 457 n.30, 107 S. Ct. 1207, 1221 n.30 (Court holds that agency interpretation which conflicts with agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view).

We hold, therefore, that under section 18—3, the State is required to pay for the public education of children residing at Parkside and attending public school within that local school district.

■ Defendants ask this court to construe section 18—3 in conjunction with two repealed definitions of "maladjusted" under other sections of the School Code. Defendants assert that this court "has authority to delete, modify, alter or supply language to a statute in order to achieve legislative intent." We need not consider these former definitions. When the meaning of a statute is clear on its face, a court need look no further to ascertain legislative intent. *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.

Moreover, even if we were to read section 18—3 in conjunction with the former definitions, our holding would not change. Those sections related to special educational services. In 1947, "maladjusted children" meant children who were "truant, incorrigible, delinquent or in need of special education facilities designed to prevent their becoming truant, incorrigible or delinquent." (Ill. Rev. Stat. 1947, ch. 122, par. 12—20 (provision for establishing special educational facilities).) In 1961, the definition was changed to include children "who because of social or emotional problems are unable to make constructive use of their school experience and require the provisions of special services designed to promote their educational growth and development." (Ill. Rev. Stat. 1961, ch. 122, par. 14—1 (provision for establishing special education facilities).) Since 1979, the School Code contains no definition of "maladjusted children," and replaces seven categories of handicapped children with one general definition of children requiring "special education services." (Ill. Rev. Stat. 1979, ch. 122, par. 14—1.02.) This definition remains substantially the same. Ill. Rev. Stat. 1987, ch. 122, par. 14—1.02.

Section 18—3, however, has nothing to do with special education. It defines children, including "maladjusted," "orphan," "dependent" and "abandoned" children, who are in need of a *regular* education,

not special education. In fact, there is a specific funding statute covering special education services for children living in homes. (Ill. Rev. Stat. 1987, ch. 122, par. 14—7.03.) Under defendants' reasoning, section 18—3 would be rendered superfluous. Defendants argue then, that section 18—3 should be treated as a "legislative oversight" and that it is "redundant and unnecessary" to have a funding provision for students in homes for maladjusted children when the handicapped and special education provisions cover such children. Defendants wish us to construe section 18—3 as though it did not exist. This is contrary to statutory construction rules requiring us to interpret a statute so that effect is given to its provisions, and no part will be superfluous or inoperative. (*Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73.) Thus, we see little reason to use the prior definitions of "maladjusted" under the special education provisions of the School Code.

Moreover, both the 1947 definition ("truant, incorrigible, delinquent"), and the 1961 definition ("social or emotional problems [and] unable to make constructive use of their school experience") certainly include children addicted to alcohol and drugs undergoing rehabilitation at Parkside.

Defendants' reliance on *School District No. 153, Cook County v. School District No. 154½, Cook County* (1977), 54 Ill. App. 3d 587, 370 N.E.2d 22, is misplaced. In that case, the court had to decide which of two school districts should pay for a child's education—the district where the State residential facility of the handicapped child was located, or the school district where the child's mother lived. This court held that the school district where the child's mother resided must either enroll the child in its own special education program or reimburse the other school district for the cost of providing special education. Section 18—3 was not discussed in that case. Thus, that case supports the proposition that children leaving their districts to receive residential treatment are entitled to a State-funded education. The question of whether the minor plaintiffs' tuition should be paid by the parents' school district is not at issue in the present case.

■ The local school district additionally argues that it should not have to reimburse plaintiffs for the tuition because it is not responsible for setting statewide education policy and it has no duty to plaintiffs. This argument is without merit. Parkside has paid approximately $67,731 to the local school district. Having received those funds, the school district would be unjustly enriched if it were not required to make restitution, notwithstanding the fact that the school district may have acted pursuant to policies enacted by the State

Board. (See *People v. Meyerowitz* (1975), 61 Ill. 2d 200, 335 N.E.2d 1 (county liable for restitution of fines illegally collected).) We note that the local school district has not filed a third-party action against the State Board.

The local school district's reliance on *Pierce v. Board of Education* (1977), 69 Ill. 2d 89, 370 N.E.2d 535, is misplaced. In *Pierce*, plaintiff did not seek the return of money unlawfully obtained by defendant.

■ The local school district also contends that the trial court abused its discretion by denying its motion for leave to file an answer. Whether a party may file a late answer rests within the sole discretion of the trial court. (*Greenlee Brothers & Co. v. Rockford Chair & Furniture Co.* (1969), 107 Ill. App. 2d 326, 246 N.E.2d 64.) The school district did not seek to file an answer until after the evidentiary hearing was held, after the court had decided the case on the merits, and after the court had issued its order. We find no abuse of discretion here.

■ In their cross-appeal, plaintiffs contend that they are entitled to relief, including attorney fees, under section 504 of Title V of the Rehabilitation Act of 1973 (29 U.S.C. §794 (1982)). Plaintiffs have not established that they are being denied a free education "solely on the basis of their handicap." (See *Parks v. Pavkovic* (7th Cir. 1985), 753 F.2d 1397.) The only reason plaintiffs are not obtaining a free education is because they are attending a school outside their home districts. The residency requirement has nothing to do with a "disability" or "handicap." The trial court properly found their section 504 claim to be without merit.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and LaPORTA, J., concur.