PIELET BROS. TRADING, INC., Petitioner-Appellant, *v.* THE POLLU-
TION CONTROL BOARD *et al.*, Respondents-Appellees.

Fifth District   No. 82—31

Opinion filed November 12, 1982.

HARRISON, J., dissenting.

Churchill, Nester & McDonnell, of Belleville (A. J. Nester, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Christine G. Zeman, Assistant Attorney General, of counsel), for appellees.

JUSTICE KASSERMAN delivered the opinion of the court:

Pursuant to Supreme Court Rule 335 (87 Ill. 2d R. 335), respondent, Pielet Bros. Trading, Inc. (Pielet), appeals from order PCB 80—185 of the Illinois Pollution Control Board (the Board). The Environmental Protection Agency's (the Agency) complaint, dated October 2, 1980, charged Pielet with (1) operation of a solid waste management site or refuse disposal operation without a permit; (2) violation of trench use requirements; (3) violation of daily cover requirements; (4) violation of spreading and compaction requirements; (5) violation of on-site roads requirements; and (6) causing or allowing open burning. All of the alleged violations occurred prior to October 2, 1978, *i.e.*, more than two years prior to the Agency's complaint. In Order PCB 80—185, the Board found Pielet "in violation of the [Environmental Protection] Act and the Board's rules as charged," assessed a penalty of $7,500 against Pielet, and ordered respondent to cease and desist from said violations.

On this appeal, Pielet does not contest the propriety of the Board's findings regarding the alleged violations. Instead, Pielet contends that (1) under section 21(e) of the Environmental Protection Act (the Act) as it existed at the time of the complaint and the order appealed from (Ill. Rev. Stat. 1977, ch. 111½, par. 1021(e)), Pielet was exempt from requirements of obtaining a permit, and (2) under section 14 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 15), the Board should not have considered evidence of violations which occurred prior to October 2, 1978.

Pielet operates an automobile shredder adjacent to the subject premises. After a junk automobile is culled for valuable components and shredded, Pielet magnetically removes most of its ferrous components for resale. The remaining refuse, or "fluff," is discarded at the site involved in this appeal. The Agency's evidence at the April 29, 1981, hearing included several photographs of the site, some of which showed piles of fluff, areas burning or smoking, and the proximity of the site to an interstate overpass. Testimony at the hearing on April 29, 1981, was in pertinent part as follows.

Agency official Patrick McCarthy testified that Pielet's permit application indicated an estimated refuse volume of 250 cubic yards per day. The witness related that on one occasion he observed seven to 10 acres of exposed shredded material at the site, composed of plastic, fiber, vinyl, foam rubber, and shiny metals.

Perry Mann, an Agency official, testified that, on one occasion, he saw the site unattended with approximately an acre of fluff on fire.

Dave Wieties, a former Agency landfill inspector, testified that on one occasion he observed seven acres of exposed shredded material at the site, about one acre of which was burning, and that on another occasion, he observed five to seven acres of exposed shredded material.

Roger Bowler, manager of the landfill, testified that Pielet accepted automobiles and appliances brought in by other people. According to Mr. Bowler, equipment at the landfill site included a crane (full-time), a 65-ton capacity dump truck (used from 6 a.m. to 6 p.m. daily), a Caterpillar tractor capable of pushing down a building (used 18 to 30 hours a week), and a front-end loader (part-time). Mr. Bowler testified that scavengers who frequented the site in search of copper wire often started fires to remove the insulation from the copper and that Pielet employees had been unable to apprehend the scavengers.

The order appealed from indicates that the landfill is an 80-acre site.

Pielet first contends that it is exempt from permit requirements under section 21(e) of the Act, which provides in pertinent part:

"[No person shall conduct] any refuse-collection or refuse-disposal operations, except for refuse generated by the operator's own activities, without a permit ***." (Ill. Rev. Stat. 1977, ch. 111½, par. 1021(e).)

The Agency argues that Pielet's operation does not qualify for this exemption because (1) it is too big an operation, (2) Pielet is disposing of environmentally harmful material, and (3) the waste is not "generated by the operator's own activities," since Pielet accepts autos and appliances which people bring in.

In finding that Pielet's landfill site did not qualify for the section 21(e) exemption, the Board concluded that this exemption " 'only exempts minor amounts of refuse which could be disposed of without environmental harm upon the site where it was generated,' " citing *Environmental Protection Agency v. City of Pontiac* (1975), 18 Ill. P.C.B. Op. 303, *Reynolds Metals Co. v. Environmental Protection Agency* (Aug. 20, 1981, and Nov. 19, 1981) 44 Ill. P.C.B. Op. 55, 57, and *R.E. Joos Excavating Co. v. Pollution Control Board* (1978), 58 Ill. App.

3d 309, 374 N.E.2d 486. The Board noted the size of the site (80 acres), the daily volume estimate (250 cubic yards), the inflammability of the fluff and the numerous on-site fires, and the metallic content of the fluff, with a "resulting potential for leachate when deposited in water, as it has been."

■ In the usual course of events it is unnecessary to look beyond the language of the statute to learn the legislative intent, but when differing interpretations are proffered, legislative intent must be gathered not only from the language used, but also from the reasons for the enactment and the purposes to be thereby attained. (*R.E. Joos Excavating Co. v. Pollution Control Board.*) Rules of construction are useful only where there is doubt as to the meaning of a statute, and a court may not alter that meaning beyond the clear import of the language employed therein. (*Sickler v. National Dairy Products Corp.* (1977), 67 Ill. 2d 229, 235; see *Schoellkopf v. DeVry* (1937), 366 Ill. 39, 49, 7 N.E.2d 757, 762.) We find the legislature's reference to refuse "generated" by the operator's own "activities" inherently ambiguous. If an operator of a landfill advertised that the landfill was open for business, would not the refuse brought in be, in a sense, "generated" by the operator's advertising "activities"?

Obviously, the legislature did not intend the exemption of section 21(e) to dominate and defeat the other provisions of the Act. In section 20(a)(2), the General Assembly states:

> "[E]xcessive quantities of refuse and inefficient and improper methods of refuse disposal result in scenic blight, cause serious hazards to public health and safety, create public nuisances, divert land from more productive uses, depress the value of nearby property, offend the senses, and otherwise interfere with community life and development." (Ill. Rev. Stat. 1981, ch. 111½, par. 1020(a)(2).)

In view of the evils decried in section 20(a)(2), we conclude that the exemption of section 21(e) must be given a somewhat more restrictive construction than that suggested by a literal reading of section 21(e) standing alone.

The Agency urges that we adopt the Board's construction of section 21(e), which construction the Agency contends is long-standing and consistent and has been tacitly approved by the legislature. In *Environmental Protection Agency v. City of Pontiac* (1975), 18 Ill. P.C.B. Op. 303, 306, the Board stated: "The intent of Section 21(e) was to exempt minor amounts of refuse which could be disposed of without environmental harm on the site where it was generated." In *Environmental Protection Agency v. R.E. Joos Excavating Co.* (1977),

43 Ill. P.C.B. Op. 161, *aff'd* (1978), 58 Ill. App. 3d 309, 374 N.E.2d 486, the Board "reaffirms its position *** that the intent of section 21(e) was to exempt minor amounts of refuse which could be disposed of without environmental harm on the site where it was generated." The Board further observed in *Joos* that its opinion in *Pontiac* was before the legislature when section 21(e) was amended, affording the legislature ample opportunity to differ with the Board's construction of section 21(e) or, alternatively, to provide the Board with some direction; however, as the Board observed, the legislature had not done this.

Since 1975, section 21 has been amended several times without change in the exemptive language of section 21(e). (Pub. Act 79—762, eff. Oct. 1, 1975 (1975 Ill. Laws 2329; Ill. Rev. Stat. 1975, ch. 111½, par. 1021); Pub. Act 81—856, eff. Jan. 1, 1980 (1979 Ill. Laws 3124; Ill. Rev. Stat. 1979, ch. 111½, par. 1021); Pub. Act 81—1186, eff. Jan. 1, 1981 (1979 Ill. Laws 4516); Pub. Act 81—1484, eff. Sept. 18, 1980(1980 Ill. Laws 1782; Ill. Rev. Stat. 1981, ch. 111½, par. 1021).) More recently, section 21 was amended to limit the exemption for wastes generated by the operator's own activities to those which are "stored, treated, disposed or transported within the site where such wastes are generated ***." Pub. Act 82—380, eff. Sept. 3, 1981 (1981 Ill. Laws 1968; Ill. Rev. Stat. 1981, ch. 111½, par. 1021(d)(1)).

While the courts will not allow a governmental agency to extend the operation of a statute by administrative regulation (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 279, 111 N.E.2d 329, 332), a reasonable interpretation of a statute by an agency charged with enforcement of that statute is entitled to great weight (*R.E. Joos Excavating Co. v. Pollution Control Board; Freeman Coal Mining Corp. v. Ruff* (1967), 85 Ill. App. 2d 145, 149, 228 N.E.2d 279, 282). Such a construction is even more persuasive if consistent, long-continued, and in conjunction with legislative acquiescence on the subject. (*People ex rel. Watson v. House of Vision* (1974), 59 Ill. 2d 508, 514-15, 322 N.E.2d 15, 19, *cert. denied* (1975), 422 U.S. 1008, 45 L. Ed. 2d 671, 95 S. Ct. 2631.) Such acquiescence appears where the legislature, presumably aware of the administrative interpretation in question, has amended other sections of the act since that interpretation but left untouched the sections subject to the administrative interpretation in question. *Freeman Coal Mining Corp. v. Ruff.*

■ Examining the instant situation in light of the above principles, we conclude as follows: First, the Board has at least twice interpreted the section 21(e) exemption as applicable only to minor

amounts of refuse which could be disposed of without environmental harm on the site where generated. Second, in light of the exemptive language used and the evils the act is directed to remedy, such construction is reasonable. Third, the legislature did not amend or more specifically define that exception during the period from 1975, the date of the Board's *Pontiac* decision, through October 1980, when the instant complaint was filed, *i.e.*, an apparent (if less than ideal) demonstration of acquiescence by the legislature. As no persuasive authority for a contrary construction is urged, and as we have found none, we concur in the construction advanced by the Agency.

■ Applying this construction to the instant facts, we find that Pielet's operation does not concern "minor amounts" of refuse. The acreage of the site, the estimated volume of refuse disposed of daily, and the stature and amount of the equipment in use at the site indicate that Pielet's operation is not "minor." We conclude that the Board did not err in determining that the section 21(e) exemption was not available to Pielet.

Additionally, we agree with the Agency's contention that the shredder refuse was not "generated by the operator's own activities." (Ill. Rev. Stat. 1975, ch. 111½, par. 1021(e).) Although Pielet "processes" junk cars and appliances, they are nevertheless other people's cars and appliances. (See *R.E. Joos Excavating Co. v. Pollution Control Board* (1978), 58 Ill. App. 3d 309, 374 N.E.2d 486, the court rejecting Joos' contention that material resulting solely from Joos' demolition and excavating business was "refuse generated by the operator's own activities.") That the Board did not expressly address this issue in the order complained of does not prevent this court from affirming that order on that basis. See *Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 282-83, 111 N.E.2d 329, 334.

Having determined that Pielet was not entitled to the section 21(e) exemption, we need not consider the alternative theories urged by the Agency to support affirmance of the Board's order.

We next consider Pielet's contention that the Board erred in considering evidence of violations occurring more than two years before the complaint was filed. Section 14 of the Limitations Act, upon which Pielet relies, provides in pertinent part:

> "Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years next after the cause of action accrued ***." (Ill. Rev. Stat. 1979, ch. 83, par. 15.)

The Agency responds that section 14 applies to "personal actions" only and not to actions by governmental agencies. Alternatively, the Agency argues that if section 14 applies to the case at bar, it applies, not to exclude evidence of violations more than two years old, but only to prevent the Board from considering those violations in assessing a penalty against Pielet.

Unless the terms of a statute of limitations expressly include the State, county, municipality or other governmental agencies, the statute, so far as public rights are concerned, as distinguished from private and local rights, is inapplicable to them. (*Clare v. Bell* (1941), 378 Ill. 128, 130-31, 37 N.E.2d 812, 814.) The question is whether the State (or its agency or subdivision) is asserting public rights on behalf of all the people of the State or private rights on behalf of a limited group. (*In re Estate of Bird* (1951), 410 Ill. 390, 394, 102 N.E.2d 329, 331.) Here, the Agency argues, and we agree, that what the Agency seeks is to protect the public's right to a clean environment. Moreover, not only does section 14 of the Limitations Act fail to expressly include the State or the Agency, but section 14 is one of a group of sections that, in general, pertain to personal actions. See *People ex rel. Stubblefield v. City of West Frankfort* (1950), 340 Ill. App. 443, 447, 92 N.E.2d 531, 533.

Defendant's authorities directed to this point are both inapposite. *M.H. Vestal Co. v. Robertson* (1917), 277 Ill. 425, 115 N.E. 629, and *Hoskins Coal & Dock Corp. v Truax Traer Coal Co.* (7th Cir. 1951), 191 F.2d 912, *cert. denied* (1952), 342 U.S. 947, 96 L. Ed. 704, 72 S. Ct. 555, both involve actions by private parties, unlike the instant case.

■ In conclusion, we hold that the Board did not err in determining that section 14 of the Limitations Act did not apply to the instant action.

For the foregoing reasons, the order of the Illinois Pollution Control Board is affirmed.

Affirmed.

WELCH, J., concurs.

JUSTICE HARRISON, dissenting:

I respectfully dissent.

I disagree with the majority's construction of section 21(e) and its decision that Pielet's automobile shredding operation is not exempt from the permit requirement contained therein.

The majority bases its conclusions on a reading of the "evils decried in section 20(a)(2)" and on legislative intent. However, as the Illinois Supreme Court has stated, "Legislative intent is to be derived primarily from a consideration of the legislative language itself. 'There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' " (*People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 371, 432 N.E.2d 855.) The language contained in section 21(e) is unambiguous. It excepts any operation whose refuse is "generated by the operator's own activities." Here, Pielet is engaged in the business of shredding auto parts and culling valuable components for resale. The refuse, "fluff," is a by-product of this activity. Because Pielet's automobile shredding business generates this refuse, his operation falls within the literal meaning of the section 21(e) exemption. A permit should, therefore, not be required.

For this reason, I would reverse the order of the Illinois Pollution Control Board.