(No. 78343.—Affirmed.)

JIM BOADEN *et al.*, Appellants, v. THE DEPART-
MENT OF LAW ENFORCEMENT *et al.*, Appel-
lees.

*Opinion filed March 21, 1996.*

HARRISON, J., took no part.
FREEMAN and McMORROW, JJ., specially concurring.

Leahy Law Offices, of Springfield (Mary Lee Leahy and Cheryl Redfield Jansen, of counsel), for appellants.

Robert V. Ogren, of Stratton, Dobbs & Nardulli, of Springfield, for appellee Department of Law Enforcement, State Police.

James E. Ryan, Attorney General, of Springfield (Rosalyn B. Kaplan and Barbara A. Preiner, Solicitors General, and John P. Schmidt, Assistant Attorney General, of Chicago, of counsel), for appellee Illinois Human Rights Commission.

Kim L. Kirn, of Springfield, for *amici curiae* Women Employed and the National Employment Lawyers Association.

JUSTICE NICKELS delivered the opinion of the court:

In this appeal, we decide whether unlawful discrimination based on "marital status" under the Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 1992))

includes no-spouse policies in the workplace. Petitioners, Jim and Colleen Boaden (Jim and Colleen), are employed as Illinois State Police troopers. Jim and Colleen are employed by respondents, the Illinois Department of Law Enforcement, State Police.[1] When Jim and Colleen announced their intention to marry one another, they were informed that an unwritten policy prohibited married couples from working on the same shift in the same patrol area. Jim and Colleen subsequently filed charges with the Department of Human Rights alleging unlawful discrimination based on marital status. An administrative law judge sustained the charges and recommended an award of damages and attorney fees.

The State Police filed exceptions to the recommended order with the Commission. The State Police contended that marital status discrimination does not include discrimination based on the identity of one's spouse. Relying on the recent case of *River Bend Community Unit School District No. 2 v. Illinois Human Rights Comm'n*, 232 Ill. App. 3d 838 (1992), the Commission concluded that marital status discrimination includes discrimination based on the identity of one's spouse. However, the Commission reversed the award of damages and attorney fees. The Commission found that no unlawful discrimination occurred because the changes to Jim and Colleen's employment did not affect terms or conditions of employment that are cognizable under the Act.

Jim and Colleen sought review of the Human Rights Commission decision in the appellate court. The appellate court confirmed the decision of the Commission, but

---

[1]At the time the complaint was filed, the respondent was part of the Illinois Department of Law Enforcement. Subsequently, the State Police became a separate department of state government.

on different grounds. 267 Ill. App. 3d 645. The appellate court concluded that marital status discrimination under the Illinois Human Rights Act does not include employment policies based on the identity of a person's spouse. 267 Ill. App. 3d at 652. In so finding, the fourth district of the appellate court expressly rejected the contrary conclusion reached by the third district in *River Bend*. We granted Jim and Colleen's petition for leave to appeal. 145 Ill. 2d R. 315. We affirm.

## Background

The Illinois State Police is organized into a number of districts. Each district is composed of smaller patrol areas, which are patrolled by a three-person squad. Each member of the squad patrols in a separate police car. The three-person squads are replaced at eight-hour intervals.

Colleen was hired to serve as a state trooper in 1982, being initially assigned to the Sangamon County patrol area. In January 1984, Colleen was granted a transfer to the Christian County patrol area. After her transfer, Colleen was assigned to work in the same three-person squad as Jim. After a period of time, Jim and Colleen became romantically involved and decided to marry.

In May 1984, Jim and Colleen informed their supervisor of their plans to marry. Jim and Colleen were informed that an unwritten policy existed which prohibited spouses from working in the same shift in the same patrol area. Jim and Colleen were presented with several options. They could remain in the same patrol area, but on different shifts. Alternatively, Jim could transfer to the Sangamon County patrol area, but work the same hours with the same days off as Colleen. Jim chose to work on a different shift in the same patrol area. This change went into effect about one week before Jim and Colleen were married on July 3, 1984. Jim and Colleen were on their honeymoon for most of July.

After they returned, Jim and Colleen met with their supervisors in attempts to reverse the policy prohibiting spouses from working the same shift. On August 16, 1984, Jim and Colleen filed separate charges of marital status discrimination with the Department of Human Rights. The district commanders for the State Patrol discussed the pending action in a meeting held in September 1984. After the meeting, the district commanders decided to rescind the policy prohibiting spouses from working the same shift. Jim and Colleen were again working the same shift in Christian County by mid-October.

After reviewing the charges, the Department of Human Rights filed separate complaints on behalf of Jim and Colleen with the Commission. The cases were consolidated by order of the chief administrative law judge. In response to the allegations, the State Police admitted that a policy had existed that prohibited Jim and Colleen from working the same shift after their marriage, but argued such a policy was beyond the protections of the Illinois Human Rights Act. The State Police argued that the Act only prohibits discrimination based on an individual's marital status, and therefore does not apply to a policy prohibiting spouses from working together.

The State Police further argued that if such a policy constituted discrimination under the Act, then the policy is a *bona fide* occupational qualification that is not actionable. In support, the State Police presented the testimony of a district commander, Captain William Jack Ryan. Ryan testified to his belief that married couples should not work together in the State Patrol for safety and operational reasons. Ryan believed that married couples working the same shift may not act objectively in dangerous situations and that their credibility may be questioned in court. Ryan also questioned

whether married couples could be effectively disciplined by superiors.

After a public hearing, the administrative law judge issued an interim recommended order and decision. Relying on the Commission's decision in *In re Burton*, 13 Ill. Hum. Rts. Comm'n Rep. 246 (1984), the administrative law judge concluded that marital status discrimination under the Human Rights Act includes no-spouse policies. In *Burton*, the Commission found that such policies constituted discrimination because the policies were based on stereotypical assumptions concerning how married couples interact in the workplace. The administrative law judge similarly rejected the *bona fide* occupational qualification defense, finding that there was no evidence to support the view that married couples could not adequately perform their duties while working in the same squad.

The administrative law judge found that Jim and Colleen both suffered changes to the terms and conditions of their employment based on their marital status. The changes in Jim's employment included his shift reassignment. Although Colleen suffered no shift change, the administrative law judge found that she suffered a change in the condition of her employment because she was no longer able to work with Jim. The administrative law judge stated:

> "Many people do not particularly care with whom they work. Others care a great deal. But whether there is a concern or not, with whom one works is as much a condition of employment as where and when one works."

The administrative law judge therefore recommended that the charges be sustained and ordered Jim and Colleen to submit a request for damages, relief, attorney fees, and costs.

A different administrative law judge conducted the hearing on damages. The judge awarded Colleen $1,620.12 for professional counseling and associated

medication and travel costs. The judge also awarded $8,100.60 to Colleen and $3,000 to Jim for emotional injury. The judge further awarded Jim and Colleen $12,351.90 for attorney fees and costs.

The State Police filed exceptions to the recommended disposition with the three-member panel of the Commission. The Commission first rejected the argument that marital status discrimination does not include nepotism policies that prohibit spouses from working together. The Commission followed the recently decided case of *River Bend Community Unit School District No. 2 v. Human Rights Comm'n*, 232 Ill. App. 3d 838 (1992), in which the third district of the appellate court held that marital status discrimination includes such discrimination based on the identity of a spouse.

Despite this ruling, the Commission reversed the award of damages to Jim and Colleen. The Commission determined that Jim and Colleen suffered no discrimination because the right to work with a specific coworker is not a term or condition of employment that is cognizable under the Act. The Commission further reasoned that the options presented to Jim did not force him to change shifts, but merely work in a different patrol area with different coworkers. These changes did not affect "terms, privileges or conditions of employment" such as hours, vacation days or rate of pay. See 775 ILCS 5/2— 102(A) (West 1992). Thus, the Commission concluded there was no violation of the Human Rights Act.

Jim and Colleen sought judicial review of the Commission's decision in the appellate court. The appellate court confirmed the Commission's finding that there was no violation of the Human Rights Act, but did so for reasons rejected by the Commission. The appellate court determined that the plain language of the Illinois Human Rights Act only prohibits discrimination based on an individual's "[m]arital status" which is defined as

"the legal status of being married, single, separated, divorced or widowed." See 775 ILCS 5/1—103(J) (West 1992). The appellate court concluded that no-spouse policies were not based on an individual's marital status, but rather on the identity of the spouse. Therefore, the appellate court held that no-spouse policies did not violate the protections afforded in the Act. In so finding, the appellate court expressly rejected the contrary holding of *River Bend,* creating a conflict between the third and fourth districts of the appellate court.

We granted Jim and Colleen's petition for leave to appeal. 145 Ill. 2d R. 315. The Illinois Human Rights Commission filed a brief as a respondent, supporting the decision of the Commission. We allowed Women Employed and the National Employment Lawyer's Association to file an *amicus curiae* brief.

Analysis

Whether marital status discrimination under the Act reaches no-spouse policies in the workplace is an issue of statutory construction and the following principles apply. In interpreting a statute, our objective is to ascertain and give effect to the intent of the legislature. *Hernon v. E.W. Corrigan Construction Co.,* 149 Ill. 2d 190, 194 (1992). The most reliable indicator of legislative intent is the language of the statute. *People v. Bryant,* 128 Ill. 2d 448, 455 (1989). The language of a statute must be given its plain and ordinary meaning. *People v. Bole,* 155 Ill. 2d 188, 197 (1993). Where the statutory language is clear and unambiguous, we must apply the statute without further aids of statutory construction. *Bole,* 155 Ill. 2d at 198; *People v. Zaremba,* 158 Ill. 2d 36, 40 (1994). The construction of a statute is an issue of law and our review is therefore *de novo. Vuletich v. United States Steel Corp.,* 117 Ill. 2d 417, 421 (1987).

The Illinois Human Rights Act provides:

"It is a civil rights violation:

(A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2—102(A) (West 1992).

The Act defines unlawful discrimination:

" 'Unlawful discrimination' means discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, *marital status*, handicap or unfavorable discharge from military service as those terms are defined in this Section." (Emphasis added.) 775 ILCS 5/1—103(Q) (West 1992).

The Act defines marital status:

" 'Marital status' means the *legal status* of being married, single, separated, divorced or widowed." (Emphasis added.) 775 ILCS 5/1—103(J) (West 1992).

We agree with the appellate court below that the statutory definition of marital status discrimination does not encompass policies based on the identity of one's spouse. As defined under the Act, prohibited marital status discrimination is discrimination based on an individual's "legal status" as married, single, separated, divorced, or widowed. In our view, a policy prohibiting spouses from working together presents an entirely different kind of harm than discrimination based on an individual's legal status. In order to find discrimination under these facts, we must consider not only the individual's legal status, but also that individual's relationship to a particular employee. Had the legislature intended to reach this kind of conduct, it would have done so in specific and certain terms. See, *e.g.*, Minn. Stat. § 363.01 (West 1991) (" 'Marital Status' means whether a person is single, married, remarried, divorced, separated, or a surviving spouse *and, in employment*

*cases, includes protection against discrimination on the basis of the identity, situation, actions, or beliefs of a spouse or former spouse"* (emphasis added)).

We recognize that our interpretation of the Human Rights Act is at odds with that of the Commission. Where based on agency expertise, the interpretation of an ambiguous statute by an agency charged with its administration is generally entitled to deference. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983). However, the erroneous construction of a statute by an administrative agency is not binding on this court. *Illinois Consolidated Telephone Co.*, 95 Ill. 2d at 153. In addition, our deference to administrative expertise will not serve to license a governmental agency to expand the operation of a statute. *Northern Trust Co. v. Bernardi*, 115 Ill. 2d 354, 365 (1987). As we find that the statute is not ambiguous, we decline to defer to the Commission's interpretation.

Jim and Colleen argue that no-spouse policies encourage persons to live together without the benefit of clergy, contrary to accepted public policy. The Commission, relying on the reasoning of *Burton*, argues that no-spouse policies constitute discrimination because they are based on stereotypical assumptions concerning spousal behavior. We express no opinion concerning whether such nepotism policies are wise or based on sound reasoning. Our role is limited to giving effect to the intent of the legislature as expressed through the plain language of the statute.

## Conclusion

We conclude that marital status discrimination under the Illinois Human Rights Act does not encompass no-spouse policies in the workplace. In light of our holding, we need not address whether the identity of a coworker is a term or condition of employment that is

recognized under the Act. For the reasons stated, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.

JUSTICE FREEMAN, specially concurring:

Today, the majority holds that an employer may discriminate against a person, in this case deny employment to a person, based on to whom that person is married. The majority concludes that such conduct is not included in the Human Rights Act's prohibition of discrimination based on "marital status." 171 Ill. 2d at 238.

I respectfully disagree with this conclusion and its underlying reasoning. I would defer to the conclusion of the Human Rights Commission that marital status discrimination includes discrimination based on the identity of one's spouse. Such discrimination is excused only where a *bona fide* occupational qualification is present. Accordingly, I do not join the majority opinion.

However, I agree with the Commission that the State Police did not violate the Act in this case. Accordingly, I concur in the result.

The majority focuses exclusively on the dictionary meaning of the statutory language, as did the appellate court (267 Ill. App. 3d 645, 652). The majority states that the goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. Further, the plain language of a statute is the best indicator of the legislative intent. Where the plain language of the statute is unambiguous, a court applies the statute without resorting to other aids of statutory construction. 171 Ill. 2d at 237.

Of course, this statement of the law is correct as far as it goes. However, the majority either pays little at-

tention to, or fails to acknowledge altogether, several additional pertinent legal principles. My application of these principles to the facts of this case prevents me from joining the majority opinion.

## I. Deference to Agency Expertise

The majority acknowledges the principle of judicial deference to an agency's interpretation of the statute that the agency administers. (171 Ill. 2d at 239.) However, the majority pays little attention to it in holding that marital status discrimination does not include discrimination based on the identity of one's spouse.

Of course, a court is not bound by an administrative agency's interpretation of a statute. However, courts give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with administering and enforcing the statute. The agency's interpretation expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that agencies can make informed judgments upon the issues, based on their experience and expertise. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97-98 (1992). Indeed, courts have held that where a broad statutory standard has been delegated to an agency's discretion, a court should rely on the agency's interpretation as controlling whenever there is reasonable debate as to its meaning. *Bruns v. Department of Registration & Education*, 59 Ill. App. 3d 872, 876 (1978); *Ranquist v. Stackler*, 55 Ill. App. 3d 545, 551 (1977).

In the present case, the administrative law judge relied on *In re Burton & Allied Chemical Corp.*, 13 Ill. Hum. Rts. Comm'n Rep. 246 (1984). In *Burton*, the Commission considered the statutory definition of "marital status" to be ambiguous and to have two meanings, one narrow and one broad. The narrow meaning of marital status refers only to *whether* a person is married or not.

Thus, discrimination based on the identity of a person's spouse is not discrimination based on that person's marital status. The broad meaning of marital status includes *to whom* a person is married. The reasoning of the broad meaning is that if a person had remained single, or obtained a divorce, that person would not have been treated differently. Thus, that person is nonetheless being discriminated against based on his or her marital status. The Commission concluded that the broad meaning of marital status was more in keeping with the overall purposes of the Act and with this court's mandate that the Act be liberally construed, which I will discuss later. *Burton*, 13 Ill. Hum. Rts. Comm'n Rep. at 250-51, 255.

In *Burton*, the Commission considered both meanings of "marital status" to be reasonable. *Burton*, 13 Ill. Hum. Rts. Comm'n Rep. at 251. In *River Bend Community Unit School District No. 2 v. Human Rights Comm'n*, 232 Ill. App. 3d 838, 842-43 (1992), the appellate court likewise recognized the reasonableness of both meanings in a thoroughly researched discussion. The court in *River Bend* upheld the Commission's adoption of the broad meaning of marital status. Accord *Ross v. Stouffer Hotel Co.*, 72 Haw. 350, 353-54, 816 P.2d 302, 303-04 (1991). In the present case, the Commission relied on *River Bend* in again concluding that marital status includes spousal identity.

The majority reasons that if the legislature intended to include spousal identity in marital status discrimination, then "it would have done so in specific and certain terms." 171 Ill. 2d at 238. However, this is precisely the type of case that calls for judicial deference to the administering agency. The task of an administrator, in this case the Commission, is to extrapolate from the broad language of the enabling statute and, using the regulatory tools that the legislature provided, to deal

with the problems that the legislature sought to address. *Stofer v. Motor Vehicle Casualty Co.*, 68 Ill. 2d 361, 370 (1977); *Ranquist*, 55 Ill. App. 3d at 550-51. The majority's reliance solely on the dictionary meaning of individual words ignores an important purpose of an administrative agency.

Further, the appellate court in *River Bend* correctly noted that the legislature has amended the Act many times subsequent to *Burton*. However, the legislature has not overruled *Burton* or amended the statutory definition of marital status in any way. *River Bend*, 232 Ill. App. 3d at 843. "A reasonable construction of an ambiguous statute by the governmental officers or departments charged with its enforcement, if contemporaneous, consistent, long-continued, and in concurrence with legislative acquiescence, creates a presumption of correctness which is only slightly less persuasive than a judicial construction of the same act." *People ex rel. Watson v. House of Vision*, 59 Ill. 2d 508, 514-15 (1974); accord *National Labor Relations Board v. Hendricks County Rural Electric Membership Corp.*, 454 U.S. 170, 177, 70 L. Ed. 2d 323, 330, 102 S. Ct. 216, 222 (1981). "Such acquiescence appears where the legislature, presumably aware of the administrative interpretation in question, has amended other sections of the act since that interpretation but left untouched the sections subject to the administrative interpretation in question." *Pielet Brothers Trading, Inc. v. Pollution Control Board*, 110 Ill. App. 3d 752, 756 (1982). Based on these principles of judicial deference, this court should uphold the Commission's broad interpretation of "marital status," which the appellate court upheld in *River Bend*.

## II. Reading Entire Statute

Turning to any one of several canons of statutory construction, it is clear that this court should uphold the Commission's adoption of the broad meaning of mar-

ital status discrimination under the Act. However, the majority fails to acknowledge them altogether.

When construing a statutory provision, a court gives the statutory language not only its ordinary and popularly understood meaning, but also the fullest rather than narrowest possible meaning to which it is susceptible. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111 (1993). Additionally, a court must evaluate a statute as a whole. Each provision should be construed in connection with every other section (*Abrahamson*, 153 Ill. 2d at 91); no word or paragraph should be interpreted so as to be rendered meaningless (*Collins*, 155 Ill. 2d at 111).

Since courts are to construe statutes according to the legislative intent, a court should regard a case that is within a statute's object, spirit, and meaning as within the statute, although the case is not within the letter of the statute. Conversely, a court should not regard a case that is within the letter of a statute as within the statute unless the case is also within the statute's object, spirit, and meaning. *Lincoln National Life Insurance Co. v. McCarthy*, 10 Ill. 2d 489, 494-95 (1957); *In re Estate of Abell*, 395 Ill. 337, 346 (1946). Courts have long observed that ascertaining the legislative intent is not always properly accomplished by mechanically applying the dictionary definitions of individual words and phrases. *Lincoln National Life Insurance Co.*, 10 Ill. 2d at 495; *Whelan v. County Officers' Electoral Board*, 256 Ill. App. 3d 555, 558 (1994); *Boyer v. Onion*, 108 Ill. App. 612, 614 (1903).

Based on these principles, this court has explained:

"Therefore, when the spirit and intent of the legislature are clearly expressed and the objects and purposes of a statute are clearly set forth, the courts are not bound by the literal language of a particular clause that might defeat such clearly expressed intent. [Citation.] Ambiguity caused by a literal and confined construction may be mod-

ified, changed or rejected to conform to an otherwise clear legislative intent [citations], and the judiciary has the authority to read language into a statute that the legislature omitted through oversight [citation]. Existing circumstances at the time the statute was enacted, contemporaneous conditions, and the object sought to be achieved all may be considered." *Collins*, 155 Ill. 2d at 112.

Accord *People ex rel. Barrett v. Thillens*, 400 Ill. 224, 231 (1948).

The Act clearly sets forth its purposes. Section 1—102(A) declares that it is the policy of this State "[t]o secure for *all* individuals within Illinois the freedom from discrimination because of *** marital status." (Emphasis added.) 775 ILCS 5/1—102(A) (West 1992). It is also the policy of this State:

"To promote the public health, welfare and safety by protecting the interest of *all* people in Illinois in maintaining personal dignity, in realizing their full productive capacities, and in furthering their interests, rights and privileges as citizens of this State." (Emphasis added.) 775 ILCS 5/1—102(E) (West 1992).

The majority's cramped interpretation of the statutory definition of marital status contravenes and renders meaningless the legislature's policy declaration. By allowing a person to be discriminated against based on to whom that person is married, the majority fails to protect the interests of *all* Illinois citizens in maintaining personal dignity; realizing their full productive capacities; and furthering their interests, rights and privileges. This discrimination may hinder a spouse from obtaining employment. This could create real adversity, especially in smaller communities where one employer could dominate the job market. See *Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board,* 51 N.Y.2d 506, 515-16, 415 N.E.2d 950, 955, 434 N.Y.S.2d 961, 966 (1980) (Cook, C.J., dissenting).

Viewing the entire statute, the majority's confined interpretation of the statutory definition of marital status actually causes ambiguity by casting doubt on the meaning and scope of the Act's stated purposes. The Commission read the statutory definition of marital status to include spousal identity. Such a reading is consistent with the spirit and intent of the legislature as clearly expressed in the Act.

### III. Remedial Nature of Act

The majority also fails to recognize that the Act is remedial in nature and must be liberally construed. *Board of Trustees of Community College District No. 508 v. Human Rights Comm'n*, 88 Ill. 2d 22, 26 (1981). Such recognition precludes the holding reached by the majority today. "A liberal construction is ordinarily one which makes the statutory rule or principle apply to more things or in more situations than would be the case under a strict construction." 3 N. Singer, Sutherland on Statutory Construction § 60.01, at 147 (5th ed. 1992). The Act, therefore, as a remedial statute, must be "made to apply to all cases which, by a fair construction of its terms, it can be made to reach." *Smith v. Stevens*, 82 Ill. 554, 556 (1876).

I note that in *Mister v. A.R.K. Partnership*, 197 Ill. App. 3d 105, 117 (1990), the appellate court concluded that this rule of liberal construction applies only to those whom the Act was intended to protect. Therefore, according to the appellate court, the rule could not be applied to determine whether a case fell within the protection of the Act in the first place. I believe that this conclusion is erroneous in light of the above-stated authorities.

The Act was enacted to secure for *all* persons in Illinois freedom from discrimination and to promote the public health, welfare, and safety. 775 ILCS 5/1—102(A), (E) (West 1992). It cannot be disputed that these are

fundamental needs. "[A] statute enacted to meet a need of the people shall be liberally construed in order that the true intent and meaning of the General Assembly may be carried out." *Prosk v. Allstate Insurance Co.*, 82 Ill. App. 2d 457, 459 (1967). The Commission considered it reasonable to read the statutory definition of marital status to include spousal identity. The majority's requirement that the legislature say so "in specific and certain terms" (171 Ill. 2d at 238) ignores the intent of the legislature to meet these needs of the people.

IV. Constitutional Considerations

In addition to frustrating the legislative will by its cramped interpretation of the statutory definition of marital status, the majority also raises legitimate doubts as to the Act's constitutionality. It is a court's duty to so interpret a statutory provision as to promote the statute's essential purposes and to avoid, if possible, a construction that would raise doubts as to the statute's constitutionality. *Craig v. Peterson*, 39 Ill. 2d 191, 201 (1968).

By prohibiting marital status discrimination, the legislature intended to forbid arbitrary classifications relating to marriage. This legislative judgment reflects the protected status that marriage and family life enjoy in our society. *Nicpon v. Nicpon*, 145 Ill. App. 3d 464, 466 (1986) (collecting cases). In accord with these fundamental principles, Illinois has a strong public policy in favor of strengthening and preserving the integrity of marriage. Ill. Ann. Stat., ch. 40, par. 102(2), Historical & Practice Notes, at 9-10 (Smith-Hurd 1980); 21 Ill. L. & Prac. *Husband & Wife* § 2, at 212 (1977).

The majority's narrow definition of marital status and uncritical upholding of no-spouse policies in the workplace has an unconstitutional effect. Such a policy could discourage similarly situated persons from marrying, or encourage them to divorce. Thus, a no-spouse

policy in the workplace undermines the preferred status enjoyed by the institution of marriage. See *Manhattan Pizza Hut*, 51 N.Y.2d at 515-16, 415 N.E.2d at 955, 434 N.Y.S.2d at 966 (Cook, C.J., dissenting).

## V. The Commission's Decision

An employer violates the Act when the employer acts with respect to the terms, privileges, and conditions of employment on the basis of unlawful discrimination. 775 ILCS 5/2—102(A) (West 1992). The record shows that the State Police offered the Boadens options including working in the same geographical area but on different shifts, or working on the same shift (including the same vacations and personal days off) but in different geographical areas. However, the Boadens wanted to work on the same shift in the same geographical area. The Commission concluded that the identity of a co-worker is not a term, privilege, or condition of employment. Thus, the Commission concluded that the State Police did not violate the Act. 171 Ill. 2d at 236.

I would uphold the Commission's decision on this basis. Unlike the no-spouse policies in *River Bend* and *Burton*, the policy of the State Police in this case simply did not affect the terms, privileges, or conditions of the Boadens' employment. Under the policy, Jim and Colleen would each perform the same tasks absent the policy, either in the same area or at the same time. The policy affected only the identity of their co-workers.

As with its interpretation of "marital status" under section 1—103(J) of the Act, the Commission's interpretation of "terms, privileges or conditions of employment" under section 2—102(A) is likewise entitled to great deference. *Abrahamson*, 153 Ill. 2d at 97-98; *Ranquist*, 55 Ill. App. 3d at 551.

## VI. Conclusion

In sum, the Commission: (1) considered the statutory

term "marital status" to be susceptible to either a broad or a narrow meaning, and (2) adopted the broad meaning. The Commission's determination is entitled to great weight and deference. Turning to any one of several canons of statutory construction, it is clear that this court should uphold the Commission's adoption of the broad meaning of the term.

In the name of "giving effect to the intent of the legislature" (171 Ill. 2d at 239), the majority actually confounds the legislative will. Further, the majority's cramped definition of marital status discrimination raises doubts as to the Act's constitutionality. I do not join the majority opinion.

However, the Commission concluded that the no-spouse policy of the State Police did not affect a term, privilege, or condition of the Boadens' employment. This determination is likewise entitled to great weight and deference. Accordingly, I concur in the result.

JUSTICE McMORROW, also specially concurring:

Because I disagree with the majority's analysis and holding with respect to the central legal issue in the case at bar, I cannot join in the majority's opinion. The question presented to this court is whether unlawful discrimination based on "marital status" includes discrimination based on the identity of one's spouse. This is an issue of first impression in this court and deserves a thorough analysis and evaluation. As discussed below, I believe that the majority's narrow interpretation of marital status discrimination under Illinois' Act is not in conformity with the liberal construction to be given remedial statutes. I further believe that the majority's ruling on the scope of marital status discrimination is not necessary to achieve a fair resolution under the specific facts of the instant case. Therefore, I write separately.

The Illinois Human Rights Act prohibits employers

from unlawfully discriminating against an employee based on his or her marital status. The Act defines "marital status" as the "legal status of being married, single, separated, divorced, or widowed." The majority states that the definition of marital status does not expressly "encompass policies based on the identity of one's spouse," which the legislature "would have" specifically included "[had] the legislature intended to reach this kind of conduct." 171 Ill. 2d at 238. The majority therefore concludes that spousal identity is not covered by the plain terms of the Act.

By holding that discrimination based on the identity of one's spouse is not a subset of marital status discrimination under the Act, the majority adopts an overly restrictive construction of marital status. In so doing the majority overrules the interpretation of marital status adopted by the Human Rights Commission more than 10 years ago when the Commission resolved this specific issue. *In re Burton*, 13 Ill. Hum. Rts. Comm'n Rep. 246 (1984). In *Burton* the Commission relied on precedent of this court for construing the Act in accordance with its remedial purposes (*Board of Trustees of Community College District No. 508 v. Human Rights Comm'n*, 88 Ill. 2d 22 (1981)) and held that the inclusion of a spouse's identity in the scope of marital status was consistent with the general remedial purpose of the Act. The Commission stated in its order in *Burton*:

> "[T]he evil meant to be remedied by the Human Rights Act was discrimination against individuals based upon stereotypes generated by conditions which are irrelevant to the employment situation. We find that [subjecting an employee to adverse consequences] based upon his or her marriage to a particular individual constitutes the same sort of evil which the legislature intended to prohibit by use of the Human Rights Act. *** [C]oncerns about imposing discipline, morale problems and alleged conflicts of interest all appear to be based upon stereotypes with respect to spousal behavior. The Respondent has offered no

reason why these particular problems cannot be dealt with on a case by case basis as they develop. The mere fact that one husband may not be able to supervise his wife effectively does not necessarily mean that no person can effectively supervise his or her spouse. The only justification for a blanket anti-nepotism rule is an assumption that all married people will act in a particular way when asked to supervise their spouses. The elimination of this sort of discrimination based upon stereotypes is well within the legislative purpose." *Burton*, 13 Ill. Hum. Rts. Comm'n Rep. at 252-53.

The Commission concluded that the Act's prohibition of marital status discrimination included the identity of a spouse because such interpretation "is consistent with the language approved by the legislature, is consistent with the overall purpose of human rights legislation and is consistent with the admonition from the Illinois Supreme Court that the Human Rights Act—as remedial legislation—should be liberally construed." *Burton*, 13 Ill. Hum. Rts. Comm'n Rep. at 255.

While an agency's construction of a statute is not binding on the court, a reasonable interpretation of a statute by the agency charged with its administration and enforcement is entitled to substantial respect. *E.g., Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142 (1983). In the instant case the majority rejects the Commission's interpretation of marital status discrimination on the grounds that the language of the statute is unambiguous and that judicial deference to administrative expertise is not required when the governmental agency expands the operation of a statute. However, the Commission's interpretation of marital status implements the purposes of the Act more closely than does the majority's analysis. Further, it is significant that the Commission's interpretation relied upon and followed *Board of Trustees*.

In *Board of Trustees of Community College District No. 508 v. Human Rights Comm'n*, 88 Ill. 2d 22 (1981),

this court held that the Human Rights Act was remedial legislation that should be construed liberally to effect its purposes. The issue in *Board of Trustees* was whether the Act, which forbids discrimination based on age, prevented City Colleges from implementing its policy of mandatory retirement for employees at age 65. This court held that although the Act did not expressly include involuntary retirement in its definition of civil rights violations, an analysis of the broad intent of the legislature and similar employment-discrimination statutes led to the conclusion that the Act encompassed retirement.

In the years following its ruling in the case of *Burton*, the Commission has adhered to its view that " 'a policy which subjects an employee to adverse consequences because of his or her marriage to a particular individual is "marital status" discrimination within the meaning of the Act and is the type of discrimination the Illinois legislature intended the Act to prohibit.' " *River Bend Community Unit School District No. 2 v. Human Rights Comm'n*, 232 Ill. App. 3d 838, 844 (1992) (quoting order of Commission). In *River Bend,* the third district of the appellate court upheld the Commission's interpretation of marital status discrimination. At issue in *River Bend* was the legality of a school district's policy of denying transfer requests that would place one spouse under the direct supervision of her or his spouse. A female teacher who had taught for many years at a school was transferred when her husband was assigned to act as principal for the school at which his wife taught. A year later she sought to be transferred back to her former school but was not considered because of the policy prohibiting transfers that would place one spouse under the direct supervision of another. The administrative law judge ruled that the teacher had made out a *prima facie* case of marital status discrimina-

tion, but further found that the school had established a *bona fide* occupation qualification. Therefore, the administrative law judge dismissed the suit. The Commission reversed, holding that the requisites of a *bona fide* occupational qualification had not been established and that the teacher had stated a claim for marital status discrimination. The school district appealed, arguing that the Act's definition of marital status does not include the identity of a spouse.

The appellate court in *River Bend* stated its belief that both constructions of the Act, as either excluding or including spousal identity, were reasonable, as evidenced by legal authorities from other jurisdictions supporting both sides of the issue. In deciding which of the two constructions should be judicially adopted in Illinois, the appellate court indicated that the Commission's interpretation of marital status was more consistent with the principle of liberal construction for remedial statutes. The appellate court also noted that the legislature had amended the Act many times since the *Burton* decision and had taken no action to overturn the agency's interpretation of marital status. The court in *River Bend* concluded that the Commission's interpretation of the law it was charged with enforcing should be upheld, observing, "[The school district's policy] is clearly triggered by a party's marital status and imposes a direct burden upon marriage. A person who remains single would not be affected by the rule." *River Bend*, 232 Ill. App. 3d at 844.

In the case at bar, as in *River Bend*, the event that triggered the change in the affected employees' statutory status was their marriage. To imply, as the majority does, that it was not the Boadens' marriage in general that caused the change but simply their marriage *to each other* is a questionable distinction on which to find there was no discrimination based on marital

status. A burden is placed on the status of being married when one partner must leave, transfer, or otherwise make a change in employment that would not be required if the couple involved were not married. See generally Annot., *What Constitutes Employment Discrimination on Basis of "Marital Status" for Purposes of State Civil Rights Laws,* 44 A.L.R.4th 1044 (1986). The highest State courts in Hawaii, Montana, Washington, and Minnesota have held that marital status discrimination reaches adverse treatment based on a spouse's identity. *Ross v. Stouffer Hotel Co.,* 72 Haw. 350, 816 P.2d 302 (1991); *Thompson v. Board of Trustees, School District No. 12,* 192 Mont. 266, 627 P.2d 1229 (1981); *Kraft, Inc. v. State,* 284 N.W.2d 386 (Minn. 1979); *Washington Water Power Co. v. Washington State Human Rights Comm'n,* 91 Wash. 2d 62, 586 P.2d 1149 (1978). See also Wexler, *Husbands & Wives: The Uneasy Case for Antinepotism Rules,* 62 B.U.L. Rev. 75 (1982); Note, *Challenging No-spouse Employment Policies as Marital Status Discrimination: A Balancing Approach,* 33 Wayne L. Rev. 1111 (1987). In contrast to the above authorities, the highest courts of Michigan and New York hold that marital status discrimination does not extend to spousal identity. *Whirlpool Corp. v. Civil Rights Comm'n,* 425 Mich. 527, 390 N.W.2d 625 (1986); *Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board,* 51 N.Y.2d 506, 415 N.E.2d 950, 434 N.Y.S.2d 961 (1980).

In *Thompson v. Board of Trustees, School District No. 12,* 192 Mont. 266, 627 P.2d 1229 (1981), two male administrators married to teachers lost employment or rank because of a school district policy that barred school administrators from having a spouse employed in any capacity in the school system. The Montana Supreme Court invalidated the policy, holding that a liberal construction of "marital status," which was not

defined in the State statute, would vindicate the remedial aims of the legislature. The court also observed that a narrow interpretation of marital status discrimination could lead to the absurd result of a person being able to retain employment merely by dissolving his or her marriage.

The Minnesota Supreme Court held that "[a]bsent a compelling and overriding bona fide occupational qualification, an antinepotism employment rule denying full-time employment to individuals married to persons already employed full time by the employer constitutes a discriminatory practice based on marital status within the meaning of the Minnesota Human Rights Act." *Kraft, Inc. v. State*, 284 N.W.2d 386, 387 (Minn. 1979). The Minnesota court stated that to allow employers to discriminate based on to whom a person was married would condone discrimination against a "portion of a protected class, *i.e.*, job applicants already married to full-time Kraft employees," and require an interpretation of marital status that "would elevate form over substance." *Kraft, Inc.*, 284 N.W.2d at 388. The court also expressed concern that where an employer is dominant in a particular geographic location, enforcing a "no-spouse" rule encourages employees to live together without marriage, in violation of public policy. *Kraft, Inc.*, 248 N.W.2d at 387. Using similar reasoning in a case involving married employees working for a hotel on the island of Kauai, the Supreme Court of Hawaii invalidated the employer's policy that prohibited direct relatives from working in the same department. *Ross v. Stouffer Hotel Co.*, 72 Haw. 350, 816 P.2d 302 (1991). The majority opinion in *Ross* joined the Washington, Montana and Minnesota courts in holding that a total prohibition against employees married to each other constituted marital status discrimination.

Courts holding that the identity of a spouse does not

come within the meaning of marital status include the highest courts of Michigan and New York. In *Whirlpool Corp. v. Civil Rights Comm'n*, 425 Mich. 527, 390 N.W.2d 625 (1986), the Michigan Supreme Court held that the legislature did not intend to include no-spouse rules as part of the proscription against marital status discrimination. In so holding the majority relied on and followed its earlier case, *Miller v. C.A. Muer Corp.*, 420 Mich. 355, 362 N.W.2d 650 (1984), in which policies barring family members and relatives from working together at the same plant were held not to violate the human rights statute. The *Miller* court had expressly declined to decide whether a policy directed at spouses only, rather than other familial relationships, constituted marital status discrimination. In *Whirlpool*, by a 4 to 3 vote, the majority extended the ruling in *Miller* to encompass no-spouse rules and held that such policies did not constitute "discrimination on the basis of marital status. It is different treatment based on the fact that one's spouse works in the same place as the applicant. Marital status is irrelevant to the employer unless there is a spouse already working for the employer. This is not discrimination based on a stereotypical view of the characteristics of married or single persons." *Whirlpool*, 425 Mich. at 531, 390 N.W.2d at 627.

In *Manhattan Pizza Hut v. New York State*, 51 N.Y.2d 506, 415 N.E.2d 950, 434 N.Y.S.2d 961 (1980), over the chief justice's dissent, the New York Court of Appeals held that a restaurant's enforcement of its "no-relatives" rule against an employee married to her supervisor was not actionable. The employee who lost her job had been working under her husband's direct supervision for four years before a new area general manager decided to enforce the company's no-relatives rule. The *Manhattan Pizza Hut* majority held that the employee's claim did not come within the scope of mari-

tal status discrimination because "the disqualification of the complainant was not for being married, but for being married to her supervisor." *Manhattan Pizza Hut*, 51 N.Y.2d at 515, 415 N.E.2d at 954, 434 N.Y.S.2d at 965.

In my view, the better-reasoned cases are those which have adopted the broader concept of marital status discrimination to include employees who are automatically penalized simply for marrying another employee. Therefore, I would reject the restrictive construction of marital status adopted by the majority in the case at bar and instead would apply the principle of liberal construction advocated in our own precedent (*Board of Trustees*, 88 Ill. 2d 22) and followed for more than 10 years by the agency charged with enforcing the Act (*Burton*, 13 Ill. Hum. Rts. Comm'n Rep. 246). It is illogical and unfair to construe the scope of marital status discrimination so narrowly that certain employees may lose their jobs or be transferred for no other reason than their decision to marry a co-employee. In such cases, the employer's stereotypical assumptions about the way married co-employees will behave in the work place are based on the event of their marriage, which cannot be separated from the employee's *marital status*. An employee whose marriage automatically results in loss of a job or forced acceptance of less desirable terms and conditions of employment is being penalized for marrying someone in the work place and for no other reason.

It should be further noted that, although the marital partner most directly affected is the employee who must resign, transfer, or seek alternative employment, the other spouse likely will suffer adverse consequences as well. Each partner in a marriage is affected by what happens to the other, and in the case of co-employees, the one who stays on the job bears the fallout of being the partial cause of the other spouse's loss of employ-

ment. This reality further underscores the fact that it is the marriage that is being penalized when employers' blanket no-spouse policies are enforced; it is unrealistic in this context to separate the individual partners from the marriage itself.

For these reasons, I disagree with the holding of the appellate panel in the instant case that the phrase "legal status" in the definition of marital status "limit[s] the scope of unlawful marital status discrimination to the relation an individual bears to the marital state." 267 Ill. App. 3d at 652. In adopting such a view, the majority in the case at bar states that prohibited discrimination is based on an individual's legal status as married, single, divorced, or widowed, and that a policy prohibiting spouses from working together "presents an entirely different kind of harm than discrimination based on an individual's legal status." 171 Ill. 2d at 238. I am not persuaded by attempts to distinguish the legal status of being married from the status of an individual who is or becomes married to another employee. Indeed, it is more reasonable to infer that the legislature defined marital status as the legal status of being married simply to distinguish the legally recognized relationship of marriage from other relationships lacking legal recognition, such as common law marriage or conjugal cohabitation between unmarried persons of the same or opposite sex.

By adopting a reductionist construction of the "plain language" of the Act, the majority opinion suggests that it is irrelevant for this court to consider the remedial aims of the Act or the authorities from other jurisdictions in construing marital status discrimination. The majority comments that if the legislature had intended to prohibit discrimination based on the identity of a spouse it would have expressly incorporated such a concept into the definition of marital status. I disagree

with the majority's unstated assumption that it is reasonable to infer from legislative silence that the legislature *intended* to exclude spousal identity from the scope of marital status discrimination. The statutory scheme proscribes certain general categories of conduct while remaining flexible enough to encompass various types of fact-specific discriminatory conduct without requiring an ongoing amendment process by the legislature. This court recognized in *Board of Trustees* that the issue of compulsory retirement was not specifically addressed in the statutory definition of age discrimination, but was nonetheless deemed actionable under the Illinois Human Rights Act. I find nothing in the statutory scheme to suggest that this court, faced with two possible interpretations of the scope of a category of proscribed conduct, should choose the narrower construction over the broader one. The legislature has repeatedly amended the Act in the years following the Commission's decision in *Burton* and this court's decision in *Board of Trustees*, but has never amended the Act to reject the Commission's interpretation of marital status discrimination. See *River Bend*, 232 Ill. App. 3d at 843.

It should be noted, moreover, that the majority's reasoning imposes on the legislature a highly specific drafting standard. The majority suggests that the legislature should have replaced its general definition of marital status with an itemization of specific types of marital status discrimination in order for the Act to reach the type of conduct raised in the case at bar. However, implicit in the very phrase "marital status" is the status of having a spouse; to require the definition of marital status to include the existence of a *specific* spouse calls for a clairvoyance on the part of the legislature that appears questionable at best.

An additional concern arises when considering the

group of employees most likely to be adversely affected by no-spouse rules. If a burden is imposed on co-employees once they are wed, the one most affected may well be the person holding the position of lesser power or prestige. A clerical worker married to a supervisor, for example, is more likely to be viewed as more "expendable" than the supervisor. The *amicus curiae* brief filed in this court on behalf of Women Employed and the National Employment Lawyers Association suggests that no-spouse policies disproportionately affect women as a group, despite the fact that such policies are gender-neutral on their face. In *EEOC v. Rath Packing Co.*, 787 F.2d 318 (8th Cir. 1986), plaintiffs established that for a five-year period in the 1970s, defendant employer hired only 7 of 95 female job applicants, and that 26 additional female applicants were denied employment because their husbands were current employees. Such a result is not in keeping with the remedial aims of the Act to prevent unlawful discrimination based on one's marital status, sex, or other category included within the statutory scheme.

Unlike the majority and the appellate panel in the case at bar, I do not view the Commission's interpretation of marital status discrimination as inappropriately expansive or beyond the power of the agency. On the contrary, the Commission's interpretation best implements the purposes of the Act. Therefore, I would confirm the Commission's interpretation that unlawful discrimination based on the identity of one's spouse is actionable. However, because I further agree with the Commission's ruling that under the circumstances of this case the Boadens did not ultimately sustain their claim of unlawful employment discrimination, I concur in the judgment of the majority of this court. I would therefore affirm the appellate court judgment, but on different grounds than those stated in that opinion and

in the opinion of the majority of this court. My reasons for affirming the ultimate result in the instant case follow.

The Commission is the agency charged with enforcing the Act, and in that role must review claims arising from a wide range of factual circumstances involving alleged discrimination. Certain types of employer conduct may be more difficult to categorize as discriminatory than other types, and the Commission must attempt a fair and uniform disposition of all cases that come before it. With respect to the standard of judicial review on appeal from final agency decisions, the degree of deference given to the fact finder depends upon whether the issue is one of law, fact, or mixed fact and law. See, *e.g., Branson v. Department of Revenue*, 168 Ill. 2d 247 (1995). In the case at bar it should be noted that the material facts are not in dispute, but only the legal conclusions drawn therefrom. Accordingly, a *de novo* standard of review is appropriate.

The Boadens worked together on the same shift and in the same location until they were married. Their supervisor informed them of an unwritten policy forbidding spouses from working together on the same shift and location. They were given three options, which included working in the same county but different shifts, working the same shift in different counties with the same supervisor, or working the same shift with matching vacation schedules, but patrolling different counties with different supervisors. The husband selected the first option. This change in his shift was in effect for only a short time because the Department of State Police soon rescinded its policy.

The administrative law judge found the existence of marital status discrimination and rejected the argument of the State Police that the no-spouse policy was a *bona fide* occupational qualification. The administrative

law judge concluded that Jim Boaden had suffered changes to his employment by the shift reassignment and that Colleen Boaden had suffered a change in the condition of her employment because she was no longer able to work with her husband. Damages were awarded to both Boadens. The State Police then appealed to the three-member panel of the Commission, which sustained the administrative law judge's interpretation of marital status discrimination but rejected the damages award and held that the Boadens had failed to establish their claim for marital status discrimination. The Commission held that the minor adjustments to Jim Boaden's schedule did not infringe on his terms and conditions of employment. Further, the Commission rejected the administrative law judge's ruling that Colleen Boaden had stated a claim for marital status discrimination based on her theory that "who a person works with" is a term, condition or privilege of employment under the Act. The Commission concluded that the Boadens did not prove a violation of the Act.

I would affirm the decision of the Commission regarding the failure of the Boadens to establish an actionable infringement upon the terms, conditions, and privileges of their employment. The fairly minor scheduling changes in Jim Boaden's assignment did not affect his salary, wages, vacation days or other terms, conditions, or privileges of employment under the Act. Colleen Boaden's schedule did not change at all. The Boadens were prevented only from being scheduled for patrol duty at the same time in the same place. Although the change in Jim Boaden's shift meant that the couple would not work the same hours, they were not forced to work in different geographical locations or under vastly different circumstances. It was, therefore, reasonable for the Commission to view the facts of the instant case as not significantly infringing on the

Boadens' terms, conditions, and privileges of employment. Different facts might have justified the granting of relief for marital status discrimination. However, under the circumstances presented in the case at bar, I believe that the Commission did not err in holding that the Boadens failed to establish their claims for marital status discrimination under the Act. I express no opinion regarding the Commission's alternative or additional finding that the Boadens sustained no damages because of the short duration of the time in which their employment situation was affected.

In conclusion, I would reverse the judgment of the appellate court insofar as it holds that the Act does not prohibit discrimination based on spousal identity. I would affirm the judgment of the appellate court only as modified in conformance with the reasoning stated herein.

JUSTICE FREEMAN joins in this special concurrence.