(No. 29763.—

In the Matter of the Estate of James H. Abell.— (Mary M. Hoover, Admx., *et al.,* Appellees, *vs.* Louise A. Hott *et al.,* Appellants.)

*Opinion filed November 20, 1946.*

Flesher & Taylor, and Edward E. Adams, both of Taylorville, for appellants.

Hershey & Bliss, and Provine, Pinkerton & Miley, both of Taylorville, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

This appeal is before us upon a certificate of importance granted by the Appellate Court for the Third District.

James H. Abell, a resident of Christian county, died testate on July 20, 1929. His will was admitted to probate, and, on August 26, 1929, letters testamentary issued to the executrix, M. Ethel Abell, a daughter. Numerous claims were filed in the county court and allowed in 1931. One claim was allowed by the circuit court in 1933. These claims, together with costs of administration, aggregate $138,924.19, and are held and owned by the National Stockyards National Bank, George W. Spates, as executor of and trustee under the will of Josiah Hall, deceased, and Minnie Mitchell. The executrix filed a petition in the county court to sell decedent's real estate for the purpose of paying debts. An order of sale was entered and, in due

course, a sale took place. Subsequently, on December 18, 1935, the county court disapproved the report of sale, set aside the sale as fraudulent and void, and ordered the executrix removed. Prior to her removal, the executrix had liquidated all of decedent's personal estate. and reported that she had applied the proceeds upon claims other than those of the three previously named. By a petition in the county court, Louise A. Hott, Riley E., Frederick H. and Thomas Wayne Abell, grandchildren and heirs by descent of the devisees in decedent's will, nominated Scott W. Hoover as administrator *de bonis non* with the will annexed. The court appointed Hoover, who qualified and letters of administration were issued to him on March 4, 1939.

No personal estate remained or came into his hands, and he subsequently filed a supplemental petition on November 9, 1943, to subject the decedent's real estate, alleged to be worth not to exceed $100,000, to sale for the payment of claims, including those of the National Stockyards National Bank, George W. Spates, as executor, and Minnie Mitchell. On January 6, 1944, Louise A. Hott, Riley E. Abell, together with all the then other heirs-at-law of James H. Abell, deceased, except one, filed their answer and special answer challenging the validity of the claims. The administrator's supplemental petition for sale was amended on August 8, 1944. The answer to the amended supplemental petition to sell real estate to pay debts interposed by the heirs of James H. Abell, deceased, as did their answer to the supplemental petition of the administrator, denied that the claims of the three creditors were just and legal claims to be charged against, or paid from, the proceeds of the sale of the real estate. Answering further, they averred that none of the claims against the estate had been allowed within seven years immediately preceding the filing of the supplemental petition and that, therefore, the court lacked jurisdiction to authorize or direct the sale

of the real estate to pay any of the claims; that more than seven years elapsed from the appointment of Hoover, as administrator, until the filing of the supplemental petition, wherefore his right to subject the lands of the decedent to pay the debts of the estate became barred by the lapse of time; that all the claims which had been allowed, with the exception of an adverse judgment rendered in 1933, were allowed in 1931; that, in consequence, the right to subject the lands to sale to pay the debts or claims had been lost by the negligence and *laches* of the administrator and barred by the Statute of Limitations; that the claims were without consideration, were not in the hands of any holder in due course, and were not valid claims against the real estate of the deceased, and, further, that no one of them was based upon any obligation entered into by James H. Abell, or signed by him, or anyone authorized by him. One of the claimants, Spates, as executor, filed an answer to Hoover's amended supplemental petition, averring that for more than seven successive years prior to November 9, 1943, he was in actual possession of tracts I, IV and V of the lands described in the petition under claim and color of title adverse to the administrator and to all persons claiming by, through or under James H. Abell, deceased; that he was then in actual possession, and the owner, of the lands; that his right and title were superior to the right of the administrator to sell the lands to pay debts and, further, that the right to subject tracts I, IV and V to sale for payment of debts accrued, as against the claimant, was barred by the seven years' Statute of Limitations.

Thereafter, Hoover, having entered the military service of the United States and being beyond its territorial limits, tendered his written resignation on May 9, 1945. The court accepted the resignation upon his turning over the balance of $3 to his successor and, upon its own motion, appointed Hoover's wife, Mary M. Hoover, as successor

administrator *de bonis non* and approved her bond. Mary M. Hoover qualified as administratrix and letters of administration were issued to her the same day, May 9. She was substituted as a party petitioner in the proceeding to sell real estate to pay debts. Three days later, on May 12, 1945, Louise A. Hott and Riley E. Abell, two of James H. Abell's grandchildren, filed their petition in the county court asking their appointment as successor administrators *de bonis non* with the will annexed. They alleged that the approximate value of the real estate in Illinois did not exceed $100,000 and of the personal property, $3. Their petition named four persons other than themselves as heirs-at-law of James H. Abell, deceased. The creditors, the National Stockyards National Bank, the owner of one claim against the estate, George W. Spates, as executor, the owner of six claims, and Minnie Mitchell, the owner of two claims, filed a cross petition on May 19, 1945, seeking the confirmation of the appointment of Mary M. Hoover, as successor administrator *de bonis non* with the will annexed. They alleged that the sole assets of the estate consist of real estate which Scott Hoover, as administrator, petitioned the court to sell in order to pay the debts and claims of the cross petitioners; that, on January 6, 1944, Louise A. Hott and Riley E. Abell, together with all the then other heirs-at-law of James H. Abell, except one, filed their answer to Hoover's petition asserting that the administrator was without power and authority as a matter of law to sell any of the decedent's real estate to pay debts; that the interests of Louise A. Hott and Riley E. Abell and the other heirs-at-law are directly adverse and in conflict with the interest of the claimant creditors and of the administrator who sought to subject decedent's real estate to sale for the payment of claims; that the approximate value of decedent's real estate remaining to be administered was $100,000, and that no personal estate remained; that the petition of Louise A. Hott and Riley E. Abell asking

for their appointment as successor administrators should be denied and that, instead, the appointment of Mary M. Hoover be ratified and confirmed, or, in the alternative, that she or some other competent or qualified person be appointed successor to Scott Hoover.

The answer of the heirs of James H. Abell, deceased, to the second amended supplemental petition of Mary M. Hoover, as administratrix, again making the averments contained in their answer to Scott Hoover's petition, averred that at no time had they, as heirs-at-law, committed any act, or caused any to be done, in any manner delaying or obstructing the administration of the estate; that the notes upon which certain claims against the estate are based were executed as collateral to certain other notes; that they are not advised as to whether such other notes have been paid in full or in part; that James H. Abell and Josiah Hall were shareholders and directors of a bank in Taylorville and, as directors, occupied a fiduciary and confidential relationship to each other, and were, in fact, co-obligors upon numerous obligations which subsequently became claims against this estate; that, since the deaths of Abell and Hall, the executor of Hall's will has purchased numerous claims against the estate of James H. Abell at considerable discounts, and that the estate of Josiah Hall should receive only what it has paid for any of the valid claims against this estate; that Abell was not the principal obligor, but, instead, the surety upon the obligations upon which two claims were based, and that the principals upon these obligations have been released, or the obligors have failed and neglected to enforce payment from them.

Upon a hearing on the petition and cross petition, the county court, on May 21, 1945, confirmed its order appointing Mary M. Hoover, as administratrix *de bonis non* with the will annexed, reapproved her bond and the letters of administration issued to her on May 9, and denied the petition of Louise A. Hott and Riley E. Abell. Upon a trial

*de novo,* the circuit court of Christian county reversed the order of the county court of May 9, 1945, appointing Mary M. Hoover administratrix and the order of May 21, 1945, confirming her appointment and denying the petition of Louise A. Hott and Riley E. Abell. The circuit court appointed Louise A. Hott and Riley E. Abell administrators *de bonis non* with the will annexed and directed them to qualify in the county court and, thereafter, to promptly comply with all orders entered in the estate by the county court. Upon appeal, the Appellate Court for the Third District reversed the judgment of the circuit court and remanded the cause, with directions to appoint Mary M. Hoover, or some other competent person, as administrator *de bonis non* with the will annexed, to complete the administration of the estate of James H. Abell, deceased. (*In re Estate of Abell,* 329 Ill. App. 73.) Upon the application of Louise A. Hott and Riley E. Abell, hereafter referred to as appellants, the Appellate Court granted a certificate of importance. The administratrix, the National Stockyards National Bank, George W. Spates, as executor, and Minnie Mitchell are the appellees.

Seeking a reversal of the judgment of the Appellate Court, appellants contend that they enjoy a preferential right to act as administrators, conformably to section 96 of the Probate Act, (Ill. Rev. Stat. 1945, chap. 3, par. 248,) which provides: "The following persons are entitled to preference in the following order in obtaining the issuance of letters of administration of the various kind: * * * (5) The grandchildren or any person nominated by them. * * * (8) A creditor of the estate." They point out that the county court exercises a special statutory jurisdiction in the probate of estates and, accordingly, insist that the quoted provisions of the statute are mandatory and, conversely, that the court is without jurisdiction in making an appointment where persons falling within a classification prescribed by the statute are qualified to act and seek

appointment as personal representatives. Attention is directed to section 94 which declares that a person is not qualified to act as administrator if he be of unsound mind or an adjudged incompetent or has been convicted of a crime rendering him infamous or is a nonresident of the State, or, if a male, less than twenty-one years of age, or, if a female, less than eighteen years of age. (Ill. Rev. Stat. 1945, chap. 3, par. 246.) Appellants are not disqualified for any of the foregoing reasons. As grandchildren, they are among the next of kin of the decedent and are members of a class ahead of creditors, within the contemplation of section 96 of the Probate Act. The three creditor-appellees do not rely, however, upon any statutory right of nomination superior to, or even on a parity with, that of appellants. Their contention is that the facts and circumstances warrant the appointment of a disinterested competent third party who is the nominee of neither of the adversaries. The question presented is not whether the county court has any discretion to appoint an administrator as between members of different classes described in the statute, (*Justice* v. *Wilkins*, 251 Ill. 13,) the issue being, instead, whether, upon the unusual fact situation presented here, the statute precludes the court from appointing a third person as administrator of an estate where the best interests of the estate require such an appointment. Appellees maintain that the court is inherently vested with a limited discretion "to determine when the statute must yield to the paramount necessity of accomplishing substantial justice between the parties in interest." The precise situation has not hitherto been presented for consideration by this court.

In the present case, the facts proclaim an adversity of interest between appellants and creditor-appellees. No personal estate remains to be administered. The claims of the creditors were allowed many years ago, a decree for the sale of real estate to pay their claims was entered, the

sale was adjudged fraudulent and set aside, and the executrix removed. Thereafter, appellants, together with other heirs-at-law of the decedent, exercised one preferential right under the statute when they nominated and obtained the appointment of Scott Hoover, as administrator. To his supplemental petition to sell real estate to pay claims of the creditors, they pleaded, *inter alia*, that their own nominee was guilty of such lack of diligence as constituted *laches*, thereby barring forever any sale to pay these claims; that the notes upon which the claim of the bank, and four claims now owned by Spates, as executor, were allowed, were not, in fact, signed by the decedent or any person authorized by him; that some of the notes were collateral to other notes which may have been paid in whole or in part; that decedent and Josiah Hall stood in a fiduciary relationship to each other, were co-obligors, and that certain claims now owned by Spates, executor of Hall's will, were acquired at a discount and thus not collectible in full; that decedent was only surety on obligations upon which the claim of Minnie Mitchell was allowed, and that the principal had been released or the claimant had failed and neglected to enforce payment, and that a like defense existed to another claim now owned (but not adjudicated) by Hall's executor. From the foregoing, appellees urge that the personal interest of appellants is so unequivocably opposed to, and in conflict with, their interest as administrators as to preclude an impartial adversary proceeding and that, to deny to appellants a second exercise of the statutory power of appointment, can result in no legal prejudice to them but will, on the other hand, assure a day in court for all parties to the controversy.

The situation presented is that appellants, if appointed administrators, would be asking the court for an order of sale of the real estate to pay creditors and, at the same time, as heirs-at-law of the decedent, would be resisting the application of themselves, as administrators. This situ-

ation would be intolerable to the law. Creditors of an estate have no right, merely because they are creditors, to be parties to proceedings to sell real estate to pay debts. An administrator, so far as enforcing payment of claims is concerned, in a very real sense, represents creditors more than the heirs since the latter can appear and defend claims, whereas the creditors may not appear and prosecute. In the present case, appellants seek to occupy dual roles. Their appointment would be manifestly unfair to appellee-creditors who have substantial claims against the estate. If their claims are valid, they can be satisfied only out of the real property as no personal property remains in the estate. Since there is a deficiency, the real estate may be sold unless barred by *laches*. Appellants have consistently urged that the claims are barred by *laches* and the Statute of Limitations. The validity, or the release of, the claims presents controversies where appellants should not, at the same time, be prosecuting and defending.

The literal interpretation of section 96 of the Probate Act advanced by appellants is contrary to familiar rules of statutory construction. Since statutes are to be construed according to their intent and meaning, a situation which is within the object, spirit and meaning of a statute is regarded as within the statute although not within the letter. (*Burke* v. *Industrial Com.* 368 Ill. 554.) Conversely, a situation within the letter is not regarded as within the statute unless also within its object, spirit and meaning. (*People ex rel. Simpson* v. *Funkhouser,* 385 Ill. 396.) Apart from the fact that appellants have invoked the preferential right of appointment upon a previous occasion, the statute neither expressly nor by implication confers an absolute right to persons within one of the eight enumerated classes to be appointed an administrator. Unsuitableness to administer may well consist in an adverse interest of some kind, or hostility to those immediately interested in the estate, whether as creditors or distributees,

or even of an interest adverse to the estate itself. (23 C.J. Executors and Administrators, sec. 117.) To hold that only insanity, conviction of an infamous crime, and minority bar the appointment of appellants as administrators would give the statute an absurd construction. If the language of a statute employed admits of two constructions, one of which makes the enactment mischievous, if not absurd, and the other renders it reasonable and wholesome, the construction leading to an absurd result should be avoided. *Inter-State Water Co.* v. *City of Danville,* 379 Ill. 41.

Appellants, having exercised one right of appointment, and who maintain that the *laches* of their appointee bars any sale, are hardly in a position to ask that they, themselves, be appointed administrators to succeed him. A high degree of adversity of interest obtains between appellants and the creditor-appellees. The latter are entitled to a fair and impartial hearing of the numerous and complex legal issues presented by the answers of appellants in the proceedings to sell real estate to pay debts. Appellants should not be both plaintiffs and defendants in proceedings to sell the land. In the instant case, the best interests of the estate will be promoted by committing its further administration to some disinterested person rather than to appellants.

We are of the opinion that, applied to the facts in this case, appellants do not enjoy the absolute right to be appointed administrators, particularly since they have previously invoked the statute, and, further, that section 96 of the Probate Act does not purport to preclude the appointment of a disinterested and competent stranger as administrator. In an analogous case, *Dennis* v. *Dennis,* 323 Ill. App. 328, the personal relations of two brothers, the only heirs-at-law, were hostile. Adversity of interest and personal animosity existed between them. Upon this factual situation, the Appellate Court decided that the

nominee of one brother should be appointed administrator instead of the other brother. The court observed that although it was generally true that a nominee of one of a class has no claim to administer an estate as opposed to another member of the class, unusual circumstances justified the county court's conclusion that the brother was not qualified to act because adverse and conflicting interests rendered him unsuitable and that a stranger ought to be appointed, saying, "The right to be appointed administrator is not an absolute one and the question of fitness is proper to be considered." In another analogous case, *Wotowa* v. *Rockey,* 229 Ill. App. 273, the court said: "In a case more than a year after the first grant of letters of administration and where it was insisted by all of the heirs of decendent that the estate had been fully and completely settled and that the estate was insolvent, we do not think that the statute, giving the preferential right to administration, applies."

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*