**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200443-U

Order filed March 3, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* ESTATE OF<br>FRANK A. STERIOTI, SR., | )<br>)<br>) | Appeal from the Circuit Court<br>of the 12th Judicial Circuit,<br>Will County, Illinois. |
| Deceased | )<br>) | |
| (Anthony Sterioti, Jesse Sterioti, Dwayne<br>Butzen, Crystal Hall, and Melissa Hall, | )<br>)<br>) | |
| Petitioners-Appellees, | )<br>) | |
| v. | )<br>) | Appeal No. 3-20-0443<br>Circuit No. 19-P-27 |
| Estate of Frank A. Sterioti, Sr.; Alexander<br>Bonds, as Executor; Frank Sterioti, Jr.;<br>Peggy Sterioti Sunday; Jessica Knight;<br>Nicholas Sterioti; and Shari Valdes, | )<br>)<br>)<br>)<br>) | |
| Respondents | )<br>) | |
| (Nicholas Sterioti and Shari Valdes,<br><br>Respondents-Appellants)). | )<br>)<br>)<br>) | Honorable<br>James Jeffery Allen,<br>Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Daugherity and Holdridge concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Trial court did not err in appointing decedent's former court-appointed guardian and county administrator as successor administrator with will annexed.

¶ 2     Respondents Nicholas Sterioti and Shari Valdes appeal from an order of the circuit court of Will County appointing Colleen Wengler, former court-appointed guardian of decedent Frank Sterioti, Sr., as successor administrator with will annexed. On appeal, respondents argue that the trial court abused its discretion by appointing Wengler because she maintained adverse positions to them while acting as Frank's guardian in prior proceedings. We affirm.

¶ 3                                        BACKGROUND

¶ 4     On August 3, 2016, Frank executed a will (2016 Will) naming his friend, Margaret Chudzik; his step-son, Dwayne Butzen; and his children, Anthony Sterioti, Jesse Sterioti, and Peggy Sunday, as beneficiaries of his estate. The will gave Frank's business, Sterioti Towing, to Anthony and Dwayne. It gave all his personal effects and household goods to Margaret and to his children, Anthony, Jesse, and Peggy, should Margaret predecease him. It also gave his real property and the residue of the estate to Margaret.

¶ 5     Two years later, in May of 2018, Frank executed a new will (2018 Will), removing Margaret, Dwayne, Anthony, and Jesse, and adding his grandson, Nicholas Sterioti, and his care giver, Shari Valdes, as beneficiaries of his estate. The terms of the new will gave the towing business to Nicholas and devised Frank's personal belongings, household goods, and real estate to Shari, naming Frank's granddaughters, Crystal and Melissa Hall, as secondary beneficiaries. It also gave the residue of Frank's estate to Shari and Frank's daughter, Peggy, in equal parts. Both wills named Alexander Bonds as executor of the estate.

¶ 6     Shortly after Frank executed the 2018 Will, Frank's son, Jesse, filed a petition for appointment of guardian for disabled adult. The petition asked the court to adjudicate Frank disabled and to appoint Dwayne as his guardian. It alleged that Frank was a disabled adult, as

2

supported by a physician's report, and that he lacked sufficient understanding or capacity to make responsible decision concerning his personal care. The physician's report was not attached to the petition.

¶ 7    On October 24, 2018, the court conducted a status hearing on the appointment of a guardian and the physician's report and an emergency motion to revoke powers of attorney in Nicholas's name. At the conclusion of the hearing, the court ordered all powers of attorney suspended and appointed Attorney Colleen Wenger, the Will County Public Guardian, as temporary guardian. The matter was then continued for status on the physician's report. Letters of office were issued to Wenger as temporary guardian the next day.

¶ 8    On December 28, 2018, Frank died. One week later, on January 4, 2019, Wengler filed a petition for letters of administration. In the petition, she alleged that "Mr. Sterioti was being financially exploited by certain individuals, including his grandson, Nicholas Sterioti, and his purported caregiver, Shari Valdes." She also alleged that, while reviewing medical records, she determined that Frank's medical needs were being neglected. Wengler stated that Frank executed a last will and testament on May 21, 2018, and alleged that the 2018 Will was executed after Frank's diagnosis of advanced vascular dementia.

¶ 9    In addition to a general request for letters to issue, the petition included specific allegations of mistreatment and undue influence by Nicholas and Shari. It alleged that Nicholas (1) made numerous and substantial withdrawals from Frank's bank accounts, (2) failed to use the funds to pay Frank's bills, (3) allowed Frank's home to fall into arrears, and (4) failed to pay Frank's real estate taxes, resulting in one parcel being sold for unpaid taxes. It also alleged that Shari failed to rectify Nicholas's malfeasance in the management of Frank's financial affairs and that she, too, made several withdrawals from Frank's accounts. The petition alleged that both Nicholas and Shari

3

used Frank's credit cards for their own personal purposes and amassed credit card debt in excess of $84,000. In addition to financial mismanagement, the petition claimed that Shari breached her duty to provide medical care to Frank and that her failure to provide appropriate care resulted in Frank's hospitalization on September 18, 2018, for malnutrition and dehydration.

¶ 10     On February 4, 2019, the trial court entered an order admitting the 2018 Will to probate and issued letters of office to Bonds as the executor. The order declaring heirship reflected that Frank was survived by the following heirs: (1) his son, Frank, Jr.; (2) his son, Jesse; (3) his son, Anthony; (4) his daughter, Peggy; and (5) his granddaughters, Crystal Hall and Melissa Hall. The court entered a second order allowing Dwayne, as manager of Frank's towing business, to continue to operate the business and provide accountings as required.

¶ 11     On August 2, 2019, Dwayne, Anthony, Jesse, Crystal, and Melissa filed a petition contesting the 2018 Will. The petition attached and identified the existence of the 2016 Will and alleged that Frank lacked testamentary capacity to devise and execute the 2018 Will.

¶ 12     On June 29, 2020, Dwayne moved to disqualify and remove Bonds as the executor of the will, citing multiple conflicts of interests. In response, Bonds admitted that he prepared the 2018 Will, that he was a witness to the execution of that will, and that he would be a necessary witness in the pending will contest action.

¶ 13     On September 15, 2020, Bonds filed a "Motion to Resign as Executor and to Allow Appointment of Administrator with Will Annexed." The trial court set the motion for hearing and ordered all parties wishing to nominate a successor administrator to do so on or before September 28, 2020.

¶ 14     On September 28, Anthony filed a *pro se* motion requesting that Frank's former guardian, Attorney Wengler, be appointed to replace Bonds. Dwayne also filed a motion, through counsel,

4

in which he nominated Wengler, the Will County Public Guardian and Public Administrator, as successor administrator of Frank's estate. In response, Shari filed a motion arguing that she should be appointed as the administrator. Her motion claimed that she had the highest preference to act as administrator under the Probate Act and that the only viable alternative to her appointment was Nicholas.

¶ 15 Within days, Crystal, Melissa, and Nicholas also filed motions requesting that Bonds be replaced. Crystal and Melissa requested that Wengler replace Bonds, stating that she would be impartial and knew the history of the case because she served as Frank's guardian. Nicholas opposed their motions. He argued that he, Shari, and Peggy were the "presumptive legatees" and therefore had preference to nominate a successor over the remaining heirs to Frank's estate, citing section 9-3 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/9-3 (West 2020)). In his petition, he acknowledged that Wengler was a respected and experienced probate attorney but claimed that she should be disqualified because she had taken adverse positions to both Nicholas and Shari while serving as Frank's guardian. He claimed that there was no hostility or adversity between the beneficiaries and asked the court to issue letters of office to him, or to him and Shari jointly.

¶ 16 On October 1, 2020, the trial court granted Bonds leave to resign and held a hearing on the appointment of a successor administrator. Dwayne argued that there were numerous issues and conflicts that would preclude respondents Nicholas and Shari from acting as administrators and noted that Wengler was familiar with the parties and the assets and was capable of acting independently. In opposition, respondents argued that persons contesting the will should not be entitled to nominate a successor and that the statutory preferences must be followed.

¶ 17 At the conclusion of the hearing, the trial court entered an order appointing Wengler as the administrator with the will annexed. The court emphasized the priority to replace Bonds with a

5

competent individual who could "take appropriate action because it hadn't been taken by Mr. Bonds." It identified the governing statutory provisions of the Probate Act and the case law and found that there had been "obvious incredible discord" and "obvious hemorrhaging" of Frank's estate. It further found that "it is important that if possible[,] we can have someone knowledgeable, someone who doesn't have to reinvent the wheel, someone who can hit the ground running." The court then entered an order on the parties' motions, appointing Wengler as successor representative, and issued letters of administration with the will annexed in her name.

¶ 18　　　　On October 27, 2020, respondents filed a timely notice of appeal pursuant to Supreme Court Rule 304(b)(1) (eff. March 8, 2016).

¶ 19　　　　　　　　　　　　　　　ANALYSIS

¶ 20　　　　On appeal, respondents contend that the trial court abused its discretion by appointing Wengler as administrator with the will annexed. They claim that the successor administrator should have been appointed in accordance with the preferred classes enumerated in the Probate Act and that no adverse interest or hostility exists to allow a deviation from the statutory preference.

¶ 21　　　　Under section 9-1 of the Probate Act, "[a] person who has attained the age of 18 years, is a resident of the United States, is not of unsound mind, is not an adjudged person with a disability as defined in this Act and has not been convicted of a felony, is qualified to act as administrator." 755 ILCS 5/9-1 (West 2020). Section 9-3 lists the classes of persons entitled to preference in obtaining letters of administration and states, in part:

> "The following persons are entitled to preference in the following order in obtaining
>
> the issuance of letters of administration and of administration with the will annexed:
>
> (a) The surviving spouse or any person nominated by the surviving spouse.

6

(b) The legatees or any person nominated by them, with preference to legatees who are children.

(c) The children or any person nominated by them.

(d) The grandchildren or any person nominated by them.

(e) The parents or any person nominated by them.

(f) The brothers and sisters or any person nominated by them.

(g) The nearest kindred or any person nominated by them.

(h) The representative of the estate of a deceased ward.

(i) The Public Administrator.

(j) A creditor of the estate." *Id.* § 9-3.

¶ 22     Although section 9-3 enumerates the preferred classes for appointing an administrator, it is well settled that the statute does not confers an absolute right to persons within one of the enumerated classes to be appointed as an administrator. *In re Abell's Estate*, 395 Ill. 337, 346 (1946).  "Unsuitableness to administer may well consist of an adverse interest of some kind, or hostility to those immediately interested in the estate, whether as creditors or distributees, or even of an interest adverse to the estate itself." *Id.* at 346-47. In determining who is qualified to act as an administrator, courts may consider nonstatutory disqualifications such as "hostility, adversity and conflict of interest." *Dennis v. Dennis*, 323 Ill. App. 3d 328, 339 (1944). The statute "does not purport to preclude the appointment of a disinterested and competent stranger as administrator." *Abell's Estate*, 395 Ill. at 347.

¶ 23     In *Abell's Estate*, the administrator of decedent's estate, having entered the military service, tendered his resignation, and the court appointed his wife as successor administrator *de bonis non* with the will annexed. *Id.* at 340-41. Three days later, two of the decedent's grandchildren filed a

petition seeking their appointment as successor administrators. The creditors filed a cross-petition asking the court to confirm the prior administrator's wife as successor or appoint another qualified, disinterested person be appointed. After a hearing, the prior successor's wife appointment was confirmed. *Id.* at 341-42.

¶ 24 On appeal, the grandchildren argued that they enjoyed a preferential right under the statue to act as administrators over the creditors who were in a much lower preferential class. *Id.* at 343-44 (referring to section 96 of the Probate Act (Ill. Rev. Stat. 1945, chap. 3, par 248), which is now codified as section 9-3 (755 ILCS 5/9-3 (West 2020))). They claimed that the statute's preferential classes were mandatory and that the lower court lacked jurisdiction to appoint others where the preferred members were of sound mind, not disqualified due to conviction of certain crimes, residents of Illinois, and of legal age.

¶ 25 The Illinois Supreme Court disagreed with their position and held that the trial court had the discretion to appoint a third party "where the best interests of the estate require such an appointment." *Id.* at 344. The court recognized that there was "an adversity of interest" between the heirs and the creditors. If the grandchildren were appointed, they would be asking the lower court for an order to sell the real estate to pay the creditors. However, in their role as heirs, they would be contesting the same petition. Our supreme court concluded that such a situation "would be intolerable to the law" because the grandchildren would be prosecuting and defending the same claim. *Id.* at 345-46. The court rejected the petitioners' strict interpretation of the statute regarding preferential classes and affirmed the lower court's appointment, finding that "the statute neither expressly nor by implication confers an absolute right to persons within one of the eight enumerated classes to be appointed an administrator." *Id.* at 346.

8

¶ 26 Applying these standards, we hold that the decision to appoint Wengler as administrator with the will annexed was within the trial court's discretion. As reflected in *Abell*, the appointment of a suitable administrator is not limited to the preferences expressed by the enumerated classes in section 9-3 the Probate Act.

¶ 27 In this case, the question before the trial court was whether it was in the best interests of the estate, based on adverse interests and hostilities, to appoint a disinterested third party. The court expressly found that there was discord and hostility between the beneficiaries and heirs and that Nicholas and Shari's interests may well be averse to the estate's. Specifically, the court noted the allegations against respondents raised in both the guardianship matter and in the petition for appointment of an administrator. Those pleadings alleged that respondents mishandled Frank's financial and medical care shortly before his death, misappropriated funds, and exercised undue influence over him in the execution of the 2018 Will. Ultimately, the validity or dismissal of Frank's last will and testament presented controversies where respondents might be asked to prosecute and defend the 2018 Will at the same. Given that Nicholas and Shari are two of the three named beneficiaries and the only devisees of any significance under the 2018 Will, their appointment as administrators would not be in the best interests of the estate.

¶ 28 Moreover, nothing suggests that Wenger is not capable and qualified to act as the administrator with the will annexed. She has general knowledge of probate matters, as the public administrator, and she has intimate knowledge of the financial condition of Frank's estate, as his prior temporary guardian. As the trial court emphasized, Wengler's prior involvement as Frank's guardian allows her to step into the role of administrator with minimal delay in the proceedings and minimal financial burden on the estate. Accordingly, we find no abuse of discretion in the trial court's decision to appoint Wengler as the successor administrator with the will annexed.

¶ 29                                    CONCLUSION

¶ 30        The judgment of the circuit court of Will County is affirmed.

¶ 31        Affirmed.