NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210277-U

NO. 4-21-0277

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 9, 2022
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| *In re* ESTATE OF BERNADINE C. MIKELS, Deceased ) | Appeal from the |
| ) | Circuit Court of |
| (Anthony R. Mikels Jr., ) | Sangamon County |
| Cross-Petitioner-Appellant, ) | No. 21P25 |
| v. ) | |
| Andrea C. Mikels and John A. Mikels, ) | |
| Petitioners-Appellees). ) | Honorable |
| ) | Gail L. Noll, |
| ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed, concluding the circuit court's determination that cross-petitioner was unsuited to serve as the administrator of his mother's estate because of the hostility between him and his siblings was not against the manifest weight of the evidence.

¶ 2   On December 17, 2020, Bernadine C. Mikels died, leaving four surviving adult children: Joseph A. Mikels, Anthony R. Mikels Jr., John A. Mikels, and Andrea C. Mikels. Thereafter, Andrea and John filed a petition for letters of administration nominating the Sangamon County Public Administrator to serve as the administrator of Bernadine's estate. Anthony, in turn, filed a cross-petition for letters of administration nominating himself to serve as the administrator of Bernadine's estate, a petition which was later supported by Joseph. Following a hearing and the

submission of written briefs, the circuit court entered an order directing the circuit clerk to issue letters of administration to the Sangamon County Public Administrator. Anthony now appeals from that order, arguing the court's determination that he was unsuited to serve as the administrator of Bernadine's estate because of the hostility between him and his siblings is against the manifest weight of the evidence. We disagree and affirm.

¶ 3                                  I. BACKGROUND

¶ 4        The following background is gleaned from the common law record and an agreed statement of facts.

¶ 5        On January 13, 2021, Joseph, through his counsel, filed a petition for probate of will and for letters testamentary. In the petition, Joseph sought to have a copy of Bernadine's will admitted to probate on the basis that he and "other family members" had been unable to locate Bernadine's original will "[d]espite exhaustive efforts." Also in the petition, Joseph characterized Andrea as a disabled person. Joseph attached to the petition the copy of Bernadine's will. The will acknowledges the existence of Bernadine's four children, bequeaths to Andrea all of Bernadine's jewelry, divides the residuary of Bernadine's estate equally amongst the children, names Joseph as the executor, and names Anthony as the successor executor.

¶ 6        On January 15, 2021, Andrea and John, through their counsel, filed an objection to Joseph's petition for probate of will and for letters testamentary. In the objection, Andrea and John argued Joseph had not alleged sufficient facts to rebut the presumption that Bernadine had revoked the will, a presumption which exists when an original will cannot be found at a testator's death. They also noted, contrary to the characterization in Joseph's petition, Andrea had not been adjudicated disabled by any court of competent jurisdiction.

¶ 7        On January 19, 2021, Joseph, through his counsel, filed a response to the objection to the petition for probate of will and for letters testamentary. In the response, Joseph alleged he and Anthony had made efforts, including a search of Bernadine's safe deposit box, to find Bernadine's original will. Joseph alleged Andrea, who resided with Bernadine at the time of her death, and John changed the locks to Bernadine's house and prevented him from entering the house to search for the original will. Joseph asserted the original will was "likely in the possession of" Andrea and John. Joseph further asserted Andrea and John had "not acted in good faith related to [Bernadine's] [e]state" and "taken actions to dispose of [its] assets." Joseph sought an opportunity for "all beneficiaries/heirs" to have access to Bernadine's house to search for the original will and an order preventing the disposal of any of Bernadine's assets.

¶ 8        On January 20, 2021, Joseph, along with his counsel, Andrea and John, along with their counsel, and Anthony, without counsel, appeared before the circuit court during the "regularly scheduled uncontested [p]robate call." The parties agreed no property would be removed from Bernadine's house. The court set the matter for a contested hearing on February 16, 2021.

¶ 9        On February 3, 2021, Joseph's counsel filed a motion for leave to withdraw as counsel. The motion indicated leave to withdraw was sought at Joseph's request.

¶ 10        On February 16, 2021, Joseph, along with his counsel, Andrea and John, along with their counsel, and Anthony, without counsel, appeared before the circuit court for the scheduled contested hearing. The court granted the motion for leave to withdraw by Joseph's counsel and then continued the matter to March 22, 2021.

¶ 11        On March 22, 2021, Joseph, without counsel, Andrea and John, along with their

counsel, and Anthony, along with his recently retained counsel, appeared before the circuit court for the continued contested hearing. Joseph testified in support of his petition for probate of will and for letters testamentary. Joseph, believing Bernadine kept her original will in her safe deposit box, visited Bernadine's safe deposit box with Anthony and Anthony's wife to search for the will. The will was not in the safe deposit box. Because John, in addition to Joseph, was an "account holder[ ]" on Bernadine's safe deposit box, Joseph "suggested that John could have taken the original will." On February 6, 2021, Joseph and his siblings, by agreement, met at Bernadine's house to conduct a 90-minute search for Bernadine's original will. A law enforcement officer was present during the search. Also during the search, Andrea, who previously lived with Bernadine, "stood in the hallway outside the doorway to her bedroom to guard her bedroom door." Joseph explained how he felt "uncomfortable" with "the circumstances regarding his family and [the] scheduled search." Following Joseph's testimony, Andrea and John moved for a directed finding, which the court granted. The court denied Joseph's petition for probate of will and for letters testamentary.

¶ 12        On March 23, 2021, Andrea and John, through their counsel, filed a petition for letters of administration. In the petition, Andrea and John nominated the Sangamon County Public Administrator to serve as the administrator of Bernadine's estate.

¶ 13        On March 24, 2021, Anthony, through his counsel, filed a cross-petition for letters of administration. In the petition, Anthony nominated himself to serve as the administrator of Bernadine's estate. Also in the petition, Anthony characterized Andrea as a disabled person and estimated the value of Bernadine's estate to be $545,000.

¶ 14        On March 26, 2021, Andrea and John, through their counsel, and Anthony, through

his counsel, filed notices of an April 7, 2021, hearing on the competing petitions for letters of administration.

¶ 15     On April 7, 2021, Andrea and John, along with their counsel, Anthony, along with his counsel, and Joseph, without counsel, appeared before the circuit court for the scheduled hearing on the competing petitions for letters of administration. Joseph "voiced support for Anthony's petition," and the court heard oral arguments; no testimony was given. Andrea and John argued the "division among the heirs" suggested it would be in the best interests of all involved to have a neutral, third party appointed as administrator. They noted, contrary to the characterizations in the petitions filed by both Anthony and Joseph, Andrea had not been adjudicated disabled, and "this was an example of how Andrea is viewed and had been treated by Anthony and Joseph." They also noted Andrea might file a claim against Bernadine's estate which, in turn, would result in Anthony having a conflict of interest if he was appointed as an administrator. Conversely, Anthony argued he was qualified, willing, and able to serve as administrator and, therefore, had a preferred right to be the administrator over a third-party nominee of Andrea and John. As to his characterization of Andrea as disabled, Anthony asserted he characterized Andrea as such because Joseph had previously done so and because Bernadine had received "disabled child benefits" through her retirement account. Following oral arguments, the court directed the parties to file briefs "on the issue of the disability of Andrea and on the appointment of a [p]ublic [a]dministrator over a family member."

¶ 16     On April 14, 2021, Andrea, through her counsel, filed a claim against Bernadine's estate, seeking to recover (1) $11,965.12 which she paid to Anthony and Joseph for funeral and burial expenses of Bernadine and (2) at least $135,000 for the years she lived with and took care

of Bernadine prior to her death.

¶ 17    On April 16, 2021, Anthony, through his counsel, filed a brief in support of his cross-petition for letters of administration. As to his characterization of Andrea as disabled, Anthony asserted the characterization "was not intended to take away [Andrea's] ability to nominate an administrator [but rather] to present an accurate representation of [his] belief concerning Andrea's status." Anthony conceded, to the extent his belief was incorrect, he had no objection to his petition being amended accordingly. As to the appointment of an administrator of Bernadine's estate, Anthony argued Andrea and John "provided no evidence in support of their [p]etition for appointment of the public administrator[,] and they provided no evidence that [he] is unable or unqualified to act as administrator." Anthony maintained, therefore, he had a preferred right to be the administrator over the third-party nominee of Andrea and John.

¶ 18    Also on April 16, 2021, Andrea and John, through their counsel, filed a brief in support of their petition for letters of administration. Andrea and John maintained Andrea had never been adjudicated as a disabled person and, therefore, she had the right to nominate an administrator. As to the appointment of an administrator of Bernadine's estate, Andrea and John argued Anthony was unsuited to be the administrator and, therefore, their third-party nominee should be appointed. In support of their argument, Andrea and John asserted Anthony would have a conflict of interest if he was appointed administrator because he "could not possibly fulfill his duty of loyalty to estate while balancing his personal interests of minimizing [Andrea's claim against the estate]." Andrea and John further asserted the court "need not look any further than the existing record of th[e] proceedings to see that hostility exists among the interested parties." They highlighted (1) the objection to Joseph's petition for probate of will and for letters testamentary

and (2) Joseph's testimony from the March 22, 2021, hearing. As to the objection to Joseph's petition, they noted the objection was to Andrea's detriment given the specific bequest in the will. As to Joseph's testimony, they noted a law enforcement officer was present during the search for the original will. They further alleged "all of the interested parties agreed that law enforcement supervision was a condition precedent for everyone to be present at the home due to the high level of tension among the family."

¶ 19        On May 4, 2021, the circuit court entered an order directing letters of administration be issued to the Sangamon County Public Administrator. In the order, the court initially found no evidence to support Anthony's characterization of Andrea as disabled and, therefore, struck the characterization from Anthony's petition and found Andrea was entitled to administer or nominate a person to administer Bernadine's estate. As to an appropriate administrator, the court considered Anthony's suitability to serve as an administrator. The court found: "The record in this case, including the testimony and argument presented on March 22, 2021[,] during a hearing on [Joseph's petition for probate of will and for letters testamentary], supports a finding of hostility amongst the Mikels siblings. While Anthony is statutorily qualified to serve as administrator, the hostility renders him unsuitable for the role." The court then, finding "the best interests of the estate will be served by appointing a competent, neutral third party as administrator," accepted the nominations by Andrea and John to appoint the Sangamon County Public Administrator to serve as the administrator of Bernadine's estate.

¶ 20        This appeal followed.

¶ 21                                II. ANALYSIS

¶ 22        On appeal, Anthony argues the circuit court's determination that he was unsuited

- 7 -

to serve as the administrator of Bernadine's estate because of the hostility between him and his siblings is against the manifest weight of the evidence. Andrea and John disagree.

¶ 23    Even though a person may be statutorily qualified to serve as an administrator of an estate (755 ILCS 5/9-1 (West 2020)), and fall within a statutory class entitling them to a preference to do so (755 ILCS 5/9-3 (West 2020)), that person does not have an absolute right to serve as an administrator. *In re Estate of Garbel*, 142 Ill. App. 3d 1067, 1068, 492 N.E.2d 589, 591 (1986) (citing *In re Estate of Abell*, 395 Ill. 337, 346-47, 70 N.E.2d 252, 256 (1946)). Instead, there are additional, nonstatutory considerations, such as the existence of hostility, an adverse interest, or a conflict of interest, which may render a person who is otherwise qualified unsuitable to serve as an administrator. See, *e.g.*, *In re Estate of Morrissey*, 38 Ill. App. 3d 981, 983, 349 N.E.2d 642, 643-44 (1976); see also *Estate of Abell*, 395 Ill. at 346-47 ("Unsuitableness to administer may well consist in an adverse interest of some kind, or hostility to those immediately interested in the estate, whether as creditors or distributees, or even of an interest adverse to the estate itself.").

¶ 24    A circuit court's determination that a person is unsuited to serve as the administrator of an estate because of hostility between that person and those immediately interested in the estate will not be reversed on appeal unless it is against the manifest weight of the evidence. See *1350 Lake Shore Associates v. Healey*, 223 Ill. 2d 607, 623, 861 N.E.2d 944, 954 (2006) (applying the manifest-weight-of-the-evidence standard of review where the issue on appeal involved a circuit court's factual determination). As our supreme court has explained:

"Under a manifest weight of the evidence standard, we give

deference to the [circuit] court as the finder of fact because it is in

the best position to observe the conduct and demeanor of the parties and the witnesses and has a degree of familiarity with the evidence that a reviewing court cannot possibly obtain. A reviewing court, therefore, must not substitute its judgment for that of the [circuit] court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *In re D.F.*, 201 Ill. 2d 476, 498-99, 777 N.E.2d 930, 943 (2002).

A circuit court's determination will be found to be against the manifest weight of the evidence "only if the opposite conclusion is clearly evident [citation] or the determination is unreasonable, arbitrary, or not based on the evidence presented." *Id.* at 498.

¶ 25        Before turning to the circuit court's determination that is in controversy in this case, we briefly address an issue Anthony raises—for the first time on appeal—concerning the threshold level of hostility to find a person unsuitable to serve as an administrator. Anthony posits the "hostility" between the person seeking to be appointed and those immediately interested in the estate must be "considerable" before the person seeking to be appointed may be found to be unsuited to serve as an administrator. In support of that position, Anthony cites *In re Estate of Abell*, 329 Ill. App. 73, 80, 67 N.E.2d 294, 297 (1946), a case in which the appellate court stated, "the preferential right to administer must yield to the discretion of the [c]ourt in unusual cases where considerable hostility, adversity and conflict of interest appear." As Andrea and John point out, the appellate court in that case did not discuss or explain what would qualify as "considerable" in its decision, nor did the supreme court, in its later decision affirming the appellate court's decision (see *Estate of Abell*, 395 Ill. at 343-48), make any distinction between hostility and

considerable hostility. In any event, even entertaining Anthony's standard for the purposes of this appeal that "considerable hostility between [him] and one of the estate beneficiaries must be present" to find him unsuitable to serve as administrator, we find, for the reasons that follow, there is sufficient evidence of record to satisfy that standard and sustain the circuit court's determination.

¶ 26 The evidence of record shows a collaborative effort by Anthony and Joseph to locate Bernadine's original will, an effort which was allegedly thwarted by the actions of Andrea and John. The search of Bernadine's house for the original will involved the presence of a law enforcement officer. In fact, we note the record contains an allegation that "all of the interested parties agreed that law enforcement supervision was a condition precedent for everyone to be present at the home due to the high level of tension among the family." The search of Bernadine's house also involved Andrea allegedly "guard[ing]" her bedroom door. Joseph explained how "the circumstances regarding his family and [the] scheduled search made him feel uncomfortable." Andrea and John successfully prevented Joseph's attempt to admit a copy of Bernadine's will for probate. By doing so, Andrea lost a specific bequest but prevented Joseph or Anthony from being executor of Bernadine's estate. Thereafter, Andrea and John supported the Sangamon County Public Administrator being appointed administrator, while Anthony and Joseph supported Anthony being appointed administrator. During the proceedings, both Anthony and Joseph characterized Andrea as a disabled person in their respective petitions. Anthony specifically characterized Andrea as such after she and John had already disputed the characterization from Joseph's petition. Andrea and John argued the characterization of Andrea as disabled "was an example of how Andrea is viewed and had been treated by Anthony and Joseph."

¶ 27 The circuit court was in a unique position of evaluating the evidence of record after

having had multiple opportunities to observe the conduct and demeanor of the Mikels siblings in the courtroom. In fact, during one of those opportunities, the court was called upon to evaluate the credibility of Joseph. While Anthony presents non-hostile explanations for the evidence of record, we find the circuit could have reasonably determined, based upon its consideration of all the evidence of record taken together, Anthony was unsuited to serve as the administrator of Bernadine's estate because of the considerable hostility between him and his siblings. As such, we need not consider the alternative arguments from Andrea and John that the court's unsuitability determination can also be sustained as a result of an apparent conflict of interest and adverse interest between Anthony and his siblings.

¶ 28        In reaching this decision, we note Anthony, in the concluding paragraph of his initial brief, contends, "The circuit court cannot make determinations based on arguments made by counsel or evidence presented at prior hearings that does not relate to the issues before the circuit court." Anthony provided, however, no reasoned argument or authority in support of his contention. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Moreover, the record indicates Andrea and John invited the court to consider "the existing record of th[e] proceedings" when ruling on the competing petitions for letters of administration, an invitation to which no objection was made by Anthony. Based upon both the lack of argument and objection, Anthony's contention does not merit further consideration.

¶ 29                            III. CONCLUSION

¶ 30        We affirm the circuit court's judgment.

¶ 31        Affirmed.